---

(No. 12770.—Reversed and remanded.)
Adam McCray *et al.* Appellants, *vs.* The City of Chicago *et al.* Appellees.

*Opinion filed February 18, 1920—Rehearing denied April 7, 1920.*

1. Ordinances—*part of section 605 of Chicago code, providing for use of wood lath and plaster, is void.* Section 605 of the Chicago code of 1911, providing for the use of wood lath and plaster of certain specifications in dwelling houses, must be construed as permitting the use of lath and plaster, only, and such provision is void as discriminating against the use of other materials or substitutes which are just as safe as the lath and plaster specified.

2. Same—*what is necessary to justify interference with lawful business or rights of property owners.* The exercise of the police power cannot be made a mere cloak for the arbitrary interference with or suppression of a lawful business, and to justify the public authorities in interfering with the rights and privileges of the owners of property it must appear that the interests of the public generally, as distinguished from those of a particular class, require such interference.

3. Same—*laws in exercise of police power are subject to supervision of courts.* Laws enacted in the exercise of the police power, whether by a municipal corporation acting in pursuance of the laws of a State or by a State itself, must be reasonable and are subject to the State and Federal constitutions, and the decision of the legislative body that the law or ordinance is reasonable is subject to the supervision of the courts.

4. SAME—*party attacking an ordinance must show it is unreasonable.* The party attacking an ordinance in the exercise of the police power because it is unreasonable must show affirmatively wherein the ordinance is unreasonable.

5. SAME—*when court will hold ordinance invalid on the ground that it is unreasonable.* An ordinance passed in the exercise of the police power should be sustained if there is room for a difference of opinion as to whether or not the public safety will be promoted thereby, but the court will not hesitate to hold it invalid when it is clearly manifest from the evidence that it is the result of arbitrary action by the city authorities.

APPEAL from the Superior Court of Cook county; the Hon. CHARLES M. FOELL, Judge, presiding.

CUTTING, MOORE & SIDLEY, GUY VAN SCHAICK, and EDWARD H. STEARNS, (CHARLES S. CUTTING, of counsel,) for appellants.

SAMUEL A. ETTELSON, Corporation Counsel, (LEON HORNSTEIN, of counsel,) for appellees.

Mr. JUSTICE CARTER delivered the opinion of the court:

This is an appeal from a decree of the superior court of Cook county dismissing for want of equity a bill for injunction filed by appellants seeking to restrain the enforcement of an ordinance of the city of Chicago as to the use of certain material other than wood lath and plaster as a lining for walls and ceilings. The trial judge certified that the validity of an ordinance was involved and the cause was one involving public interests and should be taken direct to this court. This appeal followed.

The principal, if not the only, question involved is the reasonableness of section 605 of the Chicago code of 1911. That portion of the ordinance necessary to be construed to reach a proper conclusion on this question reads as follows:

"605.—*Wood Lathing and Plastering.*

"(a) In all buildings of ordinary construction, where the use of wood lath and plaster is permitted under the

provisions of this chapter, such wood lath and plaster shall be done in accordance with these specifications: Wood lath shall not be over one and one-half inches wide, and shall be nailed to each stud, joist or bearing with not less than a three-penny fine 16-gauge nail; lath to have joints broken with not over seven lath to a break; lath to be spaced not less than one-fourth of an inch apart. All wood lath must be covered with at least two coats of plaster, such lath and plaster to finish to a total thickness of at least seven-eighths of an inch; no dirty or loamy sand to be used in the mortar or plaster.

"(*b*) In every building of ordinary construction which contains one or more rooms used for habitation or living purposes, the walls and ceilings of all rooms, including stores, (except basement and the attic rooms not used for habitation or living purposes,) throughout the building shall be covered with not less than two coats of plaster of the thickness and quality hereinbefore in this section prescribed."

The complainants, husband and wife, are the owners of a lot in Chicago on which they were erecting a building the walls and ceilings of which were being lined with material known as "Preferred Bestwall" three-eighths of an inch thick. They were ordered by the building commissioner of Chicago to cease work in putting this material on the walls and ceilings, and according to the allegations of the bill he threatened the arrest of the workmen unless they discontinued the use of Bestwall and used in place thereof wood lathing and plaster. As the result of the city's action appellants allege that they have been deprived of the right to use Preferred Bestwall in their building, to their great detriment and loss.

Bestwall is a standard and well known product manufactured by the Bestwall Manufacturing Company, a corporation licensed in Illinois, its material being sold widely throughout the country as an alternative or substitute for lath and plaster. The evidence in the record shows that

it has been indorsed and recommended, after a thorough and complete examination, by the officials of the Underwriters' Laboratories, the Armour Institute of Chicago and other institutions; that it has been passed upon favorably by the United States Bureau of Standards, United States Shipping Board and United States Industrial Housing Board, these bodies holding that it is a satisfactory and complete interior finish for walls in the place of lath and plaster; that it has been extensively used by the War Department, Navy Department and Ordnance Department of the United States government in hospitals and other government buildings. The evidence also tends to show by parties well informed as to different wallboards on the market, that Preferred Bestwall is as good a fire retardant and has as good non-combustible qualities as lath and plaster. Some of the witnesses testified that it had better qualities; that it had greater strength and was more impervious to and had greater resistance against water, moisture and wind; that it was a better conservator of heat and did not crack or deteriorate as rapidly; that it was not as subject to discoloration, was more sanitary and less liable to harbor vermin; that it was kiln dried and did not require drying out before use after being in place and was less expensive and required less labor to install than lath and plaster. The evidence also shows that Preferred Bestwall three-eighths of an inch thick is composed of a core of calcined gypsum mixed with about fifteen per cent of sawdust compressed between two sheets of very strong, tough paper, so sized that it is practically waterproof and of such a character that it will not readily support combustion. It is mixed and pressed out by machinery and cut to the required sizes of four feet wide by seven, eight, nine and ten feet long and dried in kilns. The outside of the paper covering is made as hard and dense as possible, while the inner surface is specially prepared so that the fibers inhere in the mass of gypsum as it crystallizes in drying, with

the object of making a union unaffected by water or moisture. Bestwall is nailed directly to the studding or ceiling joists or strips on brick walls, preferably with three-penny nails. The joints are left not less than a quarter of an inch open. All ends are supported by headers, so that every joint is nailed· to something firm, either a joist header, or, in the case of a brick or outside wall, to ribbon laid into the outside studding. The joints are then filled with a preparation which goes with the board, the filling being done with ordinary tools by a plasterer or decorator, and after it is set decoration proceeds as with plaster walls. Between the ceiling and the side wall space is left to fill in with the filler. It makes a smooth, uniform surface, easily decorated.

The answer of appellees puts in issue the question of the validity of the ordinance and specifically sets forth that Bestwall is one of the various kinds of substitute materials that are on the market designed to replace wood lath and plaster in living rooms of buildings of ordinary construction; that buildings of such construction include frame buildings and buildings of brick and stone where there is neither fireproof nor slow-burning material used for partitions or between floors; that none of the substitutes for lath and plaster are equal to wood lath and plaster in fire or sanitary qualities, in durability, strength and other particulars mentioned, in buildings of a permanent character; that the use of plaster is required by the ordinance only in living rooms, and that there is no ordinance of the city of Chicago which prohibits the use of substitutes in any other class of buildings except those which have living rooms, either within or without the fire limits. Appellees also contend that the pleadings and the evidence show that alternatives for wood lath and plaster are, in fact, permitted, and in particular that wallboards or plasterboards are permitted and regarded as an excellent substitute for wood lath.

Counsel for appellees argue that substitutes or alternatives for wood lath and plaster are permitted by the build-

ing commissioner rightly under a proper construction of
the ordinance. We cannot so hold. The heading of this
section of the code is, "Wood Lathing and Plastering."
While wood lath is not mentioned in paragraph (*b*) of the
ordinance, the only consistent interpretation, in our judg-
ment, of the requirement that the walls and ceilings of liv-
ing rooms in buildings of ordinary construction should "be
covered with not less than two coats of plaster of the thick-
ness and quality in this section prescribed," is, that the
"seven-eighths of an inch" includes the wood lath, because
the thickness of the plaster, alone, is nowhere prescribed in
the ordinance, nor is it possible to compute the thickness
of the plaster alone, because the thickness of the lath is not
prescribed. It would be a forced construction of this or-
dinance to suppose that the plaster alone must be seven-
eighths of an inch in thickness, and the only way in which
clause (*b*) can be consistently interpreted is that it means
the lath and plaster together should be seven-eighths of an
inch thick. As we read this ordinance, fairly construed, it
does not authorize the city authorities, either by the build-
ing commissioner or any other officer, to permit any alter-
native or substitute for wood lath and plaster in buildings
of ordinary construction which contain living rooms, but
provides that the rooms of the buildings in question "shall
be covered with not less than two coats of plaster." It
is true that counsel for appellees claim the reading of sec-
tion 605 of the code, as quoted by them in their answer,
justifies the construction urged by them,—that it authorizes
the authorities to permit substitutes and alternatives for
wood lath and plaster which are equally as useful and safe
as wood lath and plaster. We do not so read the entire pro-
visions of this ordinance. We find nothing therein that au-
thorizes any substitution in dwellings of ordinary construc-
tion, such as here under consideration, for wood lath and
plaster in the walls or ceilings.

292—5

Counsel for appellants urge that the ordinance is invalid also for the additional reason that it makes no provision whatever for the quality of the plaster or the method of its application. Counsel for appellees argue that all ordinances in the record show that the commissioner of buildings could exercise control over the quality of the plaster. We cannot so construe these other ordinances. We recognize fully the doctrine in the case of *People* v. *Reynolds*, 5 Gilm. 1, which states "that while the legislature may not divest itself of its proper functions or delegate its general legislative authority, it may still authorize others to do those things which it might properly yet cannot understandingly or advantageously do itself." But we do not think this doctrine applies to the facts in this case, because the ordinances introduced do not delegate to the building commissioner any right to make rules specifying the quality of the plaster. In our judgment they only delegate to him the right "to pass upon all questions relating to the strength and durability of building structures," but do not delegate to him or any other city authorities the power to make rules governing the qualities that the plaster must have, or the proportion of sand or any ingredients thereof, or the manner of its mixture or application. The reasoning of the argument on this point, it seems to us, is fully answered in a similar case in New York, (*Brennan* v. *Walker Co.* 173 N. Y. Supp. 449,) where it was in effect held that the public authority did not have delegated to it power to pass on such questions as are here under consideration. As we construe this ordinance, it provides that in buildings of the kind in question only wood lathing and plastering shall be used on the walls and ceilings.

Neither do we think the suggestion of counsel for appellees can be upheld that under the pleadings and evidence in this case the question at issue is the exclusion of all materials for wall covering except lath and plaster. In our judgment the pleadings only raise the issue as to whether

Preferred Bestwall three-eighths of an inch thick is equally as good material as wood lath and plaster for use in build-- ings of this kind. While it is true other Bestwall less than three-eighths of an inch in thickness was referred to in the testimony, a fair reading of the allegations of the bill will show that appellants were only asking relief as to Preferred Bestwall three-eighths of an inch in thickness. The evidence as to the other kinds of Bestwall or other kinds of wallboard substitutes for lath and plaster is only material so far as bearing upon the question whether there are substitutes that are equally useful and sanitary and lasting as wood lath and plaster.

It is conceded that the authority of the city to enact the ordinance here in question must be sought under the general police power of the city to serve and promote the public safety and health of its citizens. "It is, of course, within the power of the court to declare an ordinance to be unreasonable and void on its face by a mere inspection of the ordinance, if it is clearly of that character because of the inherent nature of its provisions. But the power of the court to declare an ordinance void because it is unreasonable is one which must be carefully exercised. When the ordinance is within the grant of power conferred upon the municipality, the persumption is that it is reasonable unless its unreasonable character appears upon its face. But the courts will declare an ordinance to be void because unreasonable upon a state of facts being shown which makes it unreasonable." (2 Dillon on Mun. Corp.—5th ed.— sec. 591.) The determination of the question whether or not the ordinance in question was reasonably necessary for the protection of life and property within the city was committed in the first instance to the municipal authorities thereof by the legislature. "When they have acted and passed an ordinance it is presumptively valid, and before a court would be justified in holding their action invalid the unreasonableness or want of necessity of such a measure

for the public safety and for the protection of life and property should be clearly made to appear. It should be manifest that the discretion imposed in the municipal authorities has been abused by the exercise of the power conferred by acting in an arbitrary manner." (*Chicago and Alton Railroad Co.* v. *City of Carlinville,* 200 Ill. 314.) "An act of the legislature which deprives the citizen of his liberty or property rights cannot be sustained under the police power unless the public health, comfort, safety or welfare demands such enactment. * * * The owner of property has the constitutional right to make any use of it he desires, so long as he does not endanger or threaten the safety, health and comfort or general welfare of the public. This right cannot be wholly taken away or limited by the State except in so far as it may become necessary for individual rights to yield to the higher and greater law of the best interest of the public." *People* v. *City of Chicago,* 261 Ill. 16.

The ordinance here in question is attacked on the ground that it is unreasonable, arbitrary and discriminatory as against the use of Preferred Bestwall three-eighths of an inch in thickness and flatly prohibits the use of any wall covering except wood lath and plaster, making no restriction as to the quality or type of the plaster which shall be used but only requiring that it shall be seven-eighths of an inch thick; that all alternatives or substitutes of wood lath and plaster are prohibited by the ordinance, irrespective of the merits of such substitutes. It is argued by counsel for appellees that the evidence shows that there is a fair difference of opinion among those experienced in the use of such materials as to whether or not Preferred Bestwall is a good substitute for wood lath and plaster. It is true that some of the witnesses for the city testified that ordinary Bestwall, or substitutes other than the one here under consideration, less than three-eighths of an inch thick were not equal to wood lath and plaster, but only one of these wit-

nesses for the city, as we read the record, had ever had any experience with Preferred Bestwall three-eighths of an inch in thickness, such as is here under consideration, and he had only made one test of this Preferred Bestwall, and that while the case was being tried in the superior court, by placing a piece a few inches in size in an oven, where it was tested under a temperature of 221° Fahrenheit.

A large amount of testimony was taken on behalf of appellants. One of their witnesses, W. C. Robinson, chief engineer of the Underwriters' Laboratories, testified that he had made an examination of Preferred Bestwall; that in his judgment it would prevent the passage of fire into the hollow spaces in walls and partitions for about ten minutes; that on studded partitions, in which Bestwall is used on both sides, it would prevent the passage of fire for about twenty minutes; that it showed fire retardant qualities twice as long as those produced by the average wood lath and lime plaster under the same conditions; that from the standpoint of ordinary wear and tear, expansion and contraction, settlement, moisture and heat, and from the standpoint of both material and finish, it was decidedly superior to wood lath and plaster of the type prescribed by the city ordinance here in question; that Preferred Bestwall board could be installed so as to furnish a smooth surface, ready for decoration, and could be installed in practically the same manner as other kinds of interior finish. The president of the Bestwall Manufacturing Company testified that in 1915 there was a fire in the plant of that company in Chicago, and the only effect the heat, intense enough to melt glass, had on the Bestwall was to calcine the core from the edges in from one-fourth to three-fourths of an inch, the company thereafter selling the remainder of the boards in a good state of preservation after the destroyed edges were cut off. Dr. E. N. Hill, a licensed physician connected with the health department of the city of Chicago for many years, testified that it was his duty to examine buildings as

to their sanitary qualities, and that he had made examinations of buildings containing lath and plaster and those containing Bestwall, and that in his opinion, comparing a good job of lath and plaster with one of Bestwall covering from a sanitary standpoint, the latter was a little superior, as it did not have the interstices and openings for vermin that plaster has; that it fits in better around moldings, does not crack, and that lath and plaster has a much higher moisture content, which is detrimental to health. A number of other witnesses testified to the same effect on behalf of appellants.

John H. Campbell, chief consulting engineer of Robert W. Hunt & Co., an engineering consulting firm of large experience and business, testified for appellees that in his opinion wood lath and plaster would retard the spread of fire better than material of the character of $\frac{3}{8}$-inch Bestwall, but the witness admitted that he had never made any fire test with the last named material. He testified that he conducted a test with $\frac{1}{4}$-inch wallboard substitute which he understood to be Bestwall but not Preferred Bestwall three-eighths of an inch thick. Robert Knight, deputy building commissioner of the city of Chicago, testified that in his opinion $\frac{3}{8}$-inch Bestwall was not as good a fire retardant as lath and plaster; that he had never seen Bestwall three-eighths of an inch thick before, never having examined this material in place in a building; that his testimony was based on other wallboards. Virgil G. Marani, consulting engineer for the Gypsum Industries Association, also testified for the city that for the purpose of fire protection good wallboard and $\frac{7}{8}$-inch lime plaster would serve equally well. He also testified that he was not familiar with the use of $\frac{3}{8}$-inch Bestwall and had not made any tests with reference to the same. A number of other witnesses also testified for the city.

The testimony of these witnesses brings into controversy to some extent the relative merits of gypsum and lime plaster as against those of Beaverboard and other types of wall-

board on the market.   On the pleadings in this case we do
not consider that the question as to the relative merits of
gypsum or lime plaster is in controversy.   As we read the
record, none of the witnesses on behalf of the city ever
saw or tested Preferred Bestwall three-eighths of an inch
thick before the commencement of the trial of this case in
the superior court.   While there is a great mass of testi-
mony in the record, we do not think there is any substan-
tial conflict as to the essential facts with reference to the
qualities of Preferred Bestwall.   From the standpoint of
health and sanitation or the prevention of disease there is
no dispute in the record that Preferred Bestwall is equal
in all these qualities to wood lath and plaster.   As to fire
protection, the great weight of the evidence, in our judg-
ment, tends to show that the inflammability of Bestwall is
only sixty per cent of the inflammability of wood lath and
plaster, and while it is true that the evidence tends to show
that lime plaster may serve as a better fire retardant than
gypsum plaster, it is clear that the ordinance does not in
any way restrict the meaning of "wood lath and plaster" to
lime plaster, and the evidence shows that gypsum plaster is
in common use.   The fire retardant qualities of any wall
covering is shown by the evidence to be affected by its dura-
bility, strength and uniformity, for if there is an opening
in the wall the flame will go through into the studding and
destroy the structural parts of the building.   The strength
and durability of the wood lath and plaster wall depend al-
most wholly on the integrity of the keys.   Some witnesses
testified as to certain tests made between Preferred Best-
wall and lath and plaster to show their comparative values
in resisting blows from furniture and other objects, and
it was shown by these tests that Bestwell was much more
durable and stronger under such tests.   It is also shown
that on this account the United States authorities had re-
quired the use of Bestwall in one hundred buildings at the
Indian Head Navy Proving Grounds, where the testimony

shows that under the government order in this regard "firing of big guns makes use of plaster prohibitive" and that Bestwall withstood the concussion of the big guns. The practicability of the use of Bestwall is proved beyond all contradiction by the use of such large quantities by the government and by the tests made by the Underwriters' Laboratories report and other tests made by scientific authorities. It is also shown by the evidence that the uniformity of any wall covering is important from the fire retardant standpoint, because the strength and fire resistance of the wall may be no greater than that of its thinnest spot. The evidence shows that Preferred Bestwall is tested before it is sold under a guaranty which accompanies each shipment, and is also tested to show its durability and strength. The facts as to these and other tests as to Preferred Bestwall were in no way controverted by the evidence. The only answer by the appellees seems to be that these tests were speculative theorizing. These witnesses were men of the highest standing in their respective lines of work, and their testimony was based on an extensive study through a large number of comparative experiments and tests of different kinds of wall material.

To justify the public authorities in interfering with the rights and privileges of the owners of property, as provided by the ordinance here in question, "it must appear, first, that the interests of the public generally, as distinguished from those of a particular class, require such interference; and second, that the means are reasonably necessary for the accomplishment of the purpose and not unduly oppressive upon individuals. The legislature may not, under the guise of protecting the public interests, arbitrarily interfere with private business or impose unusual and unnecessary restrictions upon lawful occupations. In other words, its determination as to what is a proper exercise of its police powers is not final or conclusive but is subject to the supervision of the courts." *Lawton* v. *Steele,* 152 U. S. 133.

Appellants charge that this ordinance requiring wood lath and plaster in all buildings of a certain kind tends to create a monopoly, because there are other materials equally safe that secure the same results. In *State* v. *Santee,* 111 Iowa, 1, a statute of Iowa was held unconstitutional and void which permitted a certain test of petroleum to be used for illuminating purposes, only, if used in certain kinds of lamps, when it was shown that there were other lamps that were equally safe and would procure the same results. The exercise of police power cannot be made a mere cloak for the arbitrary interference with or suppression of a lawful business. (*Laurel Hill Cemetery* v. *San Francisco,* 152 Cal. 464.) Laws enacted in the exercise of the police power, whether by a municipal corporation acting in pursuance of the laws of a State or by a State itself, must be reasonable, and are always subject to the provisions of both the Federal and State constitutions, and they are always subject to judicial scrutiny. (*In re Marshall,* 102 Fed. Rep. 323.) In *Frost* v. *City of Chicago,* 178 Ill. 250, this court had under consideration the unreasonableness of an ordinance prohibiting dealers in fruit, berries or vegetables from covering the boxes or baskets of fruit with colored netting, the city there claiming that this ordinance was a valid exercise of the police power, as tending to promote the public morals by preventing deception and imposition upon buyers of such articles. The court there said: "There was some evidence to the effect that this colored netting tended to conceal the 'true color or quality' of the fruit and some to the contrary." It was there held that fruit dealers would be subjected to unjust and oppressive discrimination by the enforcement of such an ordinance, and that, being unreasonable and oppressive in character, the ordinance was void. The rule of law with respect to how far the presumption of unreasonableness must be overcome by the evidence is stated in *Ex parte McCoy,* 10 Cal. App. 116, as follows: "It seems to us that when, under the power of the court,

evidence is taken, the court must judge of its sufficiency to establish an issue precisely as in other cases, except where the validity of a statute is in question the evidence must clearly show the ordinance to be unreasonable, and where the evidence leaves the court in doubt, that doubt must be resolved in favor of the validity of the ordinance. For example, slight evidence upon an issue of fact favorable to the validity of the ordinance may be overcome by preponderating evidence to the contrary, leaving no reasonable doubt of its reliability and weight."

The validity of the ordinance here in question, on this record, must be determined by its operation with respect to its exclusion of the use of Preferred Bestwall three-eighths of an inch thick, and not by the desirability of preventing the use of Beaverboard, Sackettboard, or any of the numerous paper or wallboards less than three-eighths of an inch thick, regardless of how desirable or undesirable any of those boards may be. The proper way to reach the evil is to regulate the use of wallboards and not to suppress their use. *In the Matter of Frazee,* 63 Mich. 396; *People* v. *Armstrong,* 73 id. 288.

Counsel for appellees argue that this case must be controlled by the holding of this court in *Hartman* v. *City of Chicago,* 282 Ill. 511. That case arose as to a portion of this same ordinance relating only to metal plates, and the discussion in that case in no way involved the question here under consideration. Metal plates have nothing in common with wallboard. They are good conductors of heat, while Preferred Bestwall is shown by the evidence here to be a poor conductor and furnishes good insulation. Metal plates are specifically mentioned in the parts of the ordinance under consideration in the *Hartman case, supra,* while there is no mention of wallboard whatever in this ordinance or its use in any of the buildings. We have examined the abstract and briefs in the *Hartman case* and in our judgment there was a plain conflict of testimony in that case, and it was

not shown clearly that the portion of the ordinance relating to metal plates was manifestly unreasonable and there was room for a fair difference of opinion as to the use of metal plates. In our judgment no unprejudiced person can read the record in that case without a serious doubt as to the fire retardant qualities of metal plates as compared with wood lath and plaster. On the other hand, we do not see how any unprejudiced person can read the record in this case without being convinced, on the evidence here offered, that Preferred Bestwall three-eighths of an inch in thickness is as good a fire retardant as lath and plaster and more sanitary and in every other way as suitable for use, from the standpoint of public health, safety and general welfare, as wood lath and plaster.

We agree with counsel for appellees that an ordinance is not discriminatory where it operates on all persons engaged in the same business or calling alike and where there is no other calling or business in precisely the same position; (2 Dillon on Mun. Corp.—5th ed.—sec. 593;) also, that an ordinance that fairly tends to serve and promote the public health or safety is reasonable; (*Spiegler* v. *City of Chicago,* 216 Ill. 114;) and that anyone attacking an ordinance because unreasonable, must show affirmatively wherein the ordinance is unreasonable; (*People* v. *Cregier,* 138 Ill. 401; *Swift* v. *Klein,* 163 id. 269;) that courts will not disturb an ordinance of the character here in question when there is room for a difference of opinion as to whether or not the public safety will be promoted by the provisions of the ordinance; (*City of Chicago* v. *Mandel Bros.* 264 Ill. 206;) that on a question whether or not a particular thing may or may not be detrimental to public safety, the determination by the legislative body, if it has not acted unfairly or arbitrarily, will be held conclusive. (*North Chicago City Railway Co.* v. *Town of Lake View,* 105 Ill. 207; *Laugel* v. *City of Bushnell,* 197 id. 20.) There can be no question, also, that the power to declare an ordinance void because

it is unreasonable is one that should be carefully exercised, and the court will not interfere simply because it believes that a different regulation might have been wiser or better, but the court will not hesitate to interfere when it is clearly manifest from the evidence that the city authorities have acted in an arbitrary manner in passing an ordinance.

We believe the ordinance in question is unjust and oppressive in its discrimination as to the material to be used for the partitions and ceilings of the rooms in ordinary dwelling houses. This being so, it must be held that these provisions of the ordinance are void and should have been so declared by the trial court.

The decree is reversed and the cause remanded.

*Reversed and remanded.*