## IN THE MATTER OF THE APPEAL OF DR. H. R. PARKER.

(Filed 22 June, 1938.)

**1. Appeal and Error § 40a—**

A judgment entered on findings of fact will not be disturbed on an exception to an immaterial finding which has no substantial bearing upon the merits of the controversy.

**2. Municipal Corporations § 37—**

A zoning ordinance will not be declared unconstitutional unless it is clearly arbitrary or irrational without substantial relation to the public health, morals, safety, or welfare, and any reasonable doubt will be resolved in favor of a valid exercise of the police power.

**3. Same—**

The burden rests upon petitioner to show the invalidity of a zoning ordinance attacked by him.

**4. Same—Zoning ordinance will not be declared invalid because it works injustice in particular instance if its purpose is within police power.**

The fact that a zoning ordinance, because of the particular circumstances, may work hardship and result in serious depreciation of value of certain property, or prohibits a structure innocuous at the particular place because of such particular circumstances, does not render the ordinance invalid if the end in view justifies the general rule of the ordinance as a valid exercise of the police power, and the ordinance includes only a reasonable margin to insure effective enforcement.

**5. Constitutional Law § 15a—Depreciation in value of property caused by operation of valid zoning ordinance is not a taking of property.**

An individual is not entitled to use his property to the detriment of the public, and depreciation of the value of property by reason of the opera-

tion of a municipal zoning ordinance which is within the police power in the promotion of the public welfare, is not a taking of property for which compensation must be paid.

**6. Municipal Corporations § 37—**

Increased congestion in cities, resulting in increased traffic and fire hazards, require progressively stricter regulations for the public welfare, and while esthetic considerations are not controlling, they may be given consideration in determining the reasonableness of a municipal ordinance.

**7. Same—Zoning ordinance restricting walls around corner lots held not invalid as applied to petitioner's property.**

The zoning ordinance in question restricted walls around corner lots where they abutted lots facing the side street of such corner lot, to five feet, provided the wall was not over 60 per cent solid, and exempted from its provisions necessary retaining walls. Petitioner built a solid brick wall around the back of his corner lot to an alley in the rear, which wall was partly a retaining wall, but which varied in height from 14 to 16 feet along the side street. *Held:* It cannot be determined as a matter of law that the ordinance, as applied to petitioner's property, has no substantial relation to the public safety, since the height of the wall would obstruct the vision of motorists using the alley in the rear to the danger of pedestrians and motorists along the side street, and to some extent would obstruct the view of motorists at the intersection of the streets, and would interfere with fighting and preventing the spread of fire on petitioner's property, and an order requiring plaintiff to remove all portions of the wall not constituting a necessary retaining wall, is without error.

Stacy, C. J., and Winborne, J., dissent.

Clarkson, J., dissenting.

Appeal by H. R. Parker, petitioner, from *Bivens, J.,* at March Civil Term, 1938, of Guilford. Affirmed.

The city of Greensboro has adopted a zoning ordinance which is now in force, the pertinent provisions of which are as follows:

"Section 13. Set Back Building Lines.

"(a) Except as specified in sections 13 and 17, no part of any building or structure shall be within 25 feet of any street line in any residence district."

"Section 17. Projection and Encroachments in Yards and Courts.

"(f) The set back and yard requirements of this ordinance shall not apply to any necessary retaining wall, or to any fence or wall which is less than five feet high and less than 60 per cent solid. Nothing herein shall prevent the construction of a rear line fence or wall to a height not exceeding six feet, except that where the rear of any corner lot abuts any lot facing on a street which is a side street with reference to said corner lot, any fence built on the rear lot line shall not be in excess of five feet in height and shall be less than 60 per cent solid."

The petitioner, who is the owner of a corner lot at the intersection of South College Park Drive and Mayflower Drive in said city, began the

erection of a line fence or wall, the height of which exceeded the limitations set in said ordinance. After the wall had been completed except for stuccoing thereof. the city building inspector issued his order to Dr. Parker, calling attention to the fact that said wall violated section 17 (f) of the zoning ordinance and directing him to remove the violation within seven days. The petitioner appealed to the board of adjustment. On the hearing of said appeal by the board of adjustment the order of the building inspector was affirmed. On application of the petitioner, a writ of *certiorari* was issued and on the return thereof the cause was duly heard.

The court below found the facts, including the following:

"5. The petitioner Dr. H. R. Parker is the owner of a lot located in a residence A district of the city of Greensboro as such a district is defined in the zoning ordinance. The lot is situated at the southeast corner of the intersection of South College Park Drive and Mayflower Drive. It fronts about 62 feet on South College Park Drive and extends southwardly some 150 to 160 feet along Mayflower Drive to a private alleyway which runs in an eastwardly direction from Mayflower Drive. Certain other lots south of the petitioner's lot and south of the alley front on Mayflower Drive. On the petitioner's lot is situated a dwelling house in which the petitioner and his wife reside.

"6. The petitioner's lot is considerably above the level of the abutting streets, the highest part of the lot being approximately 21.6 feet above the level of South College Park Drive and approximately 15.1 feet above the level of Mayflower Drive. The lot slopes from the highest part thereof toward South College Park Drive on the north and toward Mayflower Drive on the west.

"7. Between October 5, 1937, and October 12, 1937, the petitioner built a wall around the rear of his lot.

"8. The wall is a solid brick wall, eight inches thick, except that it is 21 inches thick at the base. The height of the wall is as follows:

"a. The portion of the wall which connects the house with the east wall: approximately seven feet above the natural level.

"b. The east wall: approximately 6.5 feet above the natural level.

"c. The south, or rear, wall: approximately 6.5 feet above the level at the southeast corner of the lot, increasing along approximately a 2.64 per cent grade, to nine feet above the natural level at the southwest corner of the lot.

"d. The west wall: 14.3 feet above the sidewalk at the southwest corner of the lot, increasing along approximately a 8.3 per cent grade to 16.9 feet above the sidewalk at the northwest corner of the wall.

"e. The portion of the wall which connects the house with the west wall: 16.9 feet above the sidewalk at the northwest corner, decreasing to 9.5 feet above the natural level at the point of junction with the house.

"Along the sides of the lot the wall extends from the rear of the lot approximately 30 feet toward the front of the lot and then on each side turns toward and joins the house near the rear thereof.

"9. That the wall described in finding of fact No. 8 of this judgment is contrary to and in violation of the city ordinances of the city of Greensboro as set out in paragraph two hereof."

The court thereupon adjudged that said ordinances are valid and that said wall upon the premises of the petitioner is in direct violation of the same; and ordered the petitioner to tear down said wall or make it comply with the ordinances above set out. The petitioner excepted and appealed.

*Moseley & Holt for the petitioner, appellant.*

*Hoyle & Hoyle, H. C. Wilson, and Stern & Stern for respondent, appellee.*

BARNHILL, J. The petitioner's exception No. 2 is directed to the alleged error of the court in finding that Harry Sabel, one of the protestants, acquired title to the property abutting thereon and occupied by the petitioner subsequent to the passage of the ordinances hereinbefore referred to and before the erection of the wall hereinbefore described and that various other property owners in the immediate vicinity purchased said properties both prior and subsequent to the passage of said ordinances. This finding of fact is immaterial and has no substantial bearing upon the merits of this controversy. Exception thereto is not of sufficient merit to warrant a disturbance of the judgment below.

Petitioner's third exception is to the signing of the judgment set out in the record. The facts found by the court below are fully sufficient to sustain the judgment. The judgment was in accordance with the facts found, to which no exception was entered, and must be sustained, unless there is merit in the petitioner's only other exception.

This brings us to petitioner's exception No. 1, which is the meat of the controversy and presents the contention upon which the petitioner must and does rely. This exception is to the refusal of the court below to make the following finding, to wit: "To the extent that the zoning ordinance of the city of Greensboro prohibits the construction of the petitioner's wall, it bears no substantial relation to the public health, safety, morals, or general welfare. To such extent the ordinance is an arbitrary and unreasonable restriction upon the petitioner's property rights, deprives the petitioner of his property without compensation and without due process of law, and is in violation of the fundamental law of North Carolina and section 1 of the 14th Amendment to the Constitution of the United States."

It appears from this exception that the petitioner does not challenge the constitutionality of the zoning ordinances of the city of Greensboro as a whole. The validity of comprehensive zoning ordinances has been recognized by the Supreme Court of the United States and held not violative of the provisions of the Federal Constitution. *Euclid v. Ambler Realty Co.,* 272 U. S., 365, 71 L. Ed., 303, 54 A. L. R., 1016; *Nectow v. Cambridge,* 277 U. S., 183, 72 L. Ed., 842; *Zahn v. Board of Public Works,* 274 U. S., 325, 71 L. Ed., 1074.

Zoning ordinances adopted under authority of our statute, C. S., 2776 (r), have been recognized and enforced by this Court. *Harden v. Raleigh,* 192 N. C., 395; *Little v. Raleigh,* 195 N. C., 793; *Elizabeth City v. Aydlett,* 201 N. C., 602; *In re Broughton Estate,* 210 N. C., 62.

The courts will not invalidate zoning ordinances duly adopted by a municipality unless it clearly appears that in the adoption of such ordinances the action of the city officials "has no foundation in reason and is a mere arbitrary or irrational exercise of power having no substantial relation to the public health, the public morals, the public safety or the public welfare in its proper sense." *Euclid v. Ambler Realty Co., supra; Nectow v. Cambridge, supra.*

When the most that can be said against such ordinances is that whether it was an unreasonable, arbitrary or unequal exercise of power is fairly debatable, the courts will not interfere. In such circumstances the settled rule seems to be that the court will not substitute its judgment for that of the legislative body charged with the primary duty and responsibility of determining whether its action is in the interest of the public health, safety, morals, or general welfare. *Euclid v. Ambler Realty Co., supra; Radice v. New York,* 264 U. S., 292, 68 L. Ed., 690; *Hadacheck v. Sebastian,* 239 U. S., 394, 60 L. Ed., 348, Ann. Cas. 1917-B, 927; *Thos. Cusack Co. v. Chicago,* 242 U. S., 526, 61 L. Ed., 472, L. R. A. 1918-A, 136, Ann. Cas. 1917-C, 594; *Rast v. Van Deman and L. Co.,* 240 U. S., 342, 60 L. Ed., 679, L. R. A. 1917-A, 421, Ann. Cas. 1917-B, 455; *Price v. Illinois,* 238 U. S., 446, 59 L. Ed., 1400; *Zahn v. Board of Public Works, supra. Harden v. Raleigh, supra,* in which the Court quotes with approval from *Rosenthal v. Goldsboro,* 149 N. C., 128, as follows: "It may now be considered as established with us that our courts will always be most reluctant to interfere with these municipal governments in the exercise of discretionary powers conferred upon them for the public weal and will never do so unless their action should be so clearly unreasonable as to amount to an oppressive and a manifest abuse of their discretion. This position is, we think, supported by the better reason and is in accord with the decided weight of authority." *Parks v. Commissioners,* 186 N. C., 490; *Lee v. Waynesville,* 184 N. C., 568; *S. v. Vanhook,* 182 N. C., 831; *Dula v. School Trustees,* 177 N. C., 426; *Rollins v. Winston-Salem,* 176 N. C., 411.

IN RE APPEAL OF PARKER.

It is declared in the ordinances that the provisions thereof constitute the minimum requirements for the promotion of public health, safety and general welfare of the city. This is presumed to be correct and the burden rested upon the petitioner to show that the pertinent part of the ordinance in fact bears no substantial relation to the public health, safety, morals or general welfare. In declining to make the finding requested by the petitioner and in sustaining the validity of the ordinance the court below, by inference at least, found that the petitioner had failed to carry the burden.

The petitioner complains that the ordinance is an arbitrary and unreasonable restriction upon the petitioner's property rights. That he, due to the particular circumstances of his case, may suffer hardship and inconvenience by an enforcement of the ordinance is not sufficient ground for invalidating it. *State v. Christopher,* 317 Mo., 1179. The fact that the ordinance is harsh and seriously depreciates the value of complainant's property is not enough to establish its invalidity. *American Woods Products Co. v. Minneapolis,* 21 F (2nd), 440; *Hadacheck v. Sebastian, supra.* There is no serious difference of opinion in respect of the validity of laws and regulations fixing the heights of buildings within reasonable limits, the character of materials and methods of construction, and the adjoining area which must be left open in order to minimize the danger of fire or collapse, the evils of overcrowding and the like, and excluding from residential sections offensive trades, industries and structures likely to create nuisances. *Euclid v. Ambler Realty Co., supra.* When such restrictions· are made it may develop that not only offensive or dangerous industries or structures will be excluded, but those which are neither offensive nor dangerous will share the same fate. But this is no more than happens in respect to practice-forbidding laws, which the courts have upheld, although drawn in general terms so as to include individual cases that may turn out to be innocuous in themselves. *Hebe Co. v. Shaw,* 248 U. S., 297, 63 L. Ed., 255; *Pierce Oil Co. v. Hope,* 248 U. S., 498, 63 L. Ed., 381; *Euclid v. Ambler Realty Co., supra.*

The inclusion of a reasonable margin to insure effective enforcement will not put upon a law otherwise valid the stamp of invalidity. Such laws may also find their justification in the fact that in some fields the bad fades into the good by such insensible degrees that the two are not capable of being readily distinguished and separated in terms of legislation. In the light of these considerations, we are not prepared to say that the end in view was not sufficient to justify the general rule of the ordinance, although some structures of an innocent character might fall within the prescribed class. It cannot be said that the ordinance in this respect "passes the bounds of reason and assumes the character of a merely arbitrary fiat." *Purety Extract & Tonic Co. v. Lynch,* 226 U. S., 192, 57 L. Ed., 184.

Each person holds his property with the right to use the same in such manner as will not interfere with the rights of others, or the public interest or requirement. It is held in subordination to the rights of society. He may not do with it as he pleases any more than he may act in accordance with his personal desires. The interests of society justify restraints upon individual conduct and also upon the use to which the property may be devoted. The provisions of the Constitution are not intended to so protect the individual in the use of his property as to enable him to use it to the detriment of the public. When the uses to which the individual puts his property conflict with the interest of society the right of the individual is subordinated to the general welfare and incidental damage to the property resulting from governmental activities or laws passed in the promotion of the public welfare is not considered a taking of the property for which compensation must be made.

The present motorized age has created much more rapid and congested traffic on the public streets of cities, greatly increasing the hazard of traffic for pedestrians and the users of vehicles alike. This in turn demands and requires legislation much more restrictive of individual rights than has heretofore been known to the law. The safety of the public now requires open and unobstructed street crossings and intersections. Large and congested urban areas increase fire hazards, requiring regulations which would be oppressive in rural sections or small villages; and while esthetic considerations are by no means controlling, it is not inappropriate to give some weight to them in determining the reasonableness of the law under consideration.

A consideration of the evidence in this case, and particularly of the photographs offered in evidence, makes it appear that the users of automobiles entering the street from the alley at the rear of the petitioner's property would cross the sidewalk of Mayflower Drive from behind a solid wall more than fifteen feet high. It cannot be said that this would not increase the hazard to pedestrians on Mayflower Drive, as well as to vehicular travel on the street. To some extent, at least, the wall, being more than 16 feet high at the point nearest Southern College Park Drive, obstructs the view of those who approach the Southern College Park Drive intersection. The wall encloses the rear portion of petitioner's house and is high enough to conceal the larger portion of the rear end of the house. It is reasonable to assume that in case of fire this wall would materially hamper the fire department in extinguishing the fire on the petitioner's property or on adjoining property, and in the prevention of a spread of such fire. Certainly we cannot say as a matter of law that these considerations are not sufficient to support the wisdom of the legislation and the validity of the ordinance.

Upon the record here we find no warrant for saying that the ordinance is unconstitutional as applied to the facts in the present case, or that it "passes the bounds of reason and assumes the character of a merely arbitrary fiat," having no substantial relation to the public safety and public welfare of the community.

It appears from the record in this cause that a considerable portion of the wall built by the petitioner is in fact a retaining wall. As the ordinance expressly excepts any necessary retaining wall so much of the wall as extends from the street line to the natural level of petitioner's lot is not prohibited. In the interpretation and enforcement of the judgment below it should be understood that the same relates only to that portion of the wall which is above the natural level of petitioner's lot. The petitioner has the right to remove so much of the wall as now constructed as will bring it within the terms of the ordinance, and as thus reduced in height, maintain the same, if he is so advised.

Affirmed.

STACY, C. J., and WINBORNE, J., dissent.

CLARKSON, J., dissenting: When an ordinance is subject to two or more interpretations, one of which involves the destruction of private property without compensation and the other of which involves merely the clarification of an ordinance within the ordinance powers, is the Court justified in accepting the former view and rejecting the latter? In the instant case the majority opinion, in interpreting an ambiguous ordinance, accepts the view that this ordinance prohibits, within the residence area of the city, *any* fence which either exceeds five feet in height *or* is more than 60% solid; further, the majority view approves such an interpretation of the ordinance as a valid exercise of the police powers of a municipality. In accordance with the view of the majority the judgment in the instant case orders the destruction of the upper portion of the wall constructed by petitioner on his property. With this result I cannot concur. In my opinion such an interpretation of the ordinance involves an unreasonable invasion of the traditional and accepted rights of property owners. Furthermore, I think the ordinance in question is subject to an interpretation which not only embraces a valid exercise of the police power but likewise will permit the petitioner's wall to be constructed in such a way as to accomplish, in part at least, the purpose of the present wall.

Zoning regulations are predicated upon the exercise of granted police powers. The valid exercise of these powers must always be grounded in necessity, and that necessity must be in the interest of the public safety, health, morals, or general welfare. See *Munn v. Illinois,* 94 U. S., 113; *Nectow v. Cambridge,* 277 U. S., 183. Granting that reason-

able zoning regulations are permissible, under the express and implied powers delegated to municipalities, the question here is merely whether an ordinance subject to several interpretations shall be upheld under a view which safeguards the long-established and well-recognized rights of ownership or shall be approved as to an interpretation which carries with it the destruction of private property by court order.

The topography of petitioner's corner lot is somewhat unusual. The lot is highest near the center; at the highest point on one street it is 21.6 feet above the street level and on the other street, at its highest point, it is 15.1 feet above the street level. Accordingly, the lot slopes from the residence toward the streets, but even at the street lines a retaining wall is necessary due to the natural elevation of the lot at its outer edges. The wall objected to forms a court at the rear of petitioner's home, the wall itself extending along an alley to the rear of the lot and for a short distance along the side street on which petitioner's lot abuts. As the level of the top of the wall around the court is constant, due to the slope of the lot the height of the wall at different points varies from 6.5 feet to 16.9 feet. The portion along the side street varies from 14.3 feet to 16.9 feet in height above the sidewalk level, the residence being located about twenty feet above the level of one street and ten feet above the level of the other.

Petitioner is a physician, who is necessarily often away from home at night, thus leaving his wife alone in the house. Accordingly, he consulted an architect and requested that a wall be planned in the interest of privacy and safety but in keeping with the style of the house, which the photographs filed in the case show to be a mixed Spanish and Italian type of architecture. The wall as built was declared by architectural experts to be well adapted to the house and the lot. One landscape architect declared that it "improved the appearance of the property and the neighborhood," and another declared that when it has been stuccoed and covered with vines it will be "one of the most attractive gardens in Greensboro." The city's superintendent of parks stated that it was in no way objectionable from an esthetic point of view, and a number of petitioner's neighbors testified to the same effect. Both the city and county health officers testified that the wall does not interfere with the light or ventilation of petitioner's or of neighbor's properties, and architects and contractors joined them in testifying that the wall is carefully and substantially constructed and in no way endangers public safety. No criticism of the wall related to public morals, or phases of the general welfare which have not already been discussed here.

Against this factual background the ordinance itself may be analyzed. "(f) The set back and yard requirements of this ordinance shall not apply to any necessary retaining wall, or to any fence or wall which is less than five feet high and less than 60 per cent solid. Nothing herein

shall prevent the construction of a rear line fence or wall to a height not exceeding six feet, except that where the rear of any corner lot abuts any lot facing on a street which is a side street with reference to said corner lot, any fence built on the rear lot line shall not be in excess of five feet in height and shall be less than 60 per cent solid." From what level the five foot and six foot limitations are to be measured, whether from the street level, the natural level, the level of the highest point of the lot, or the top of a necessary retaining wall where one is needed, is left in complete darkness. Whether there is to be any limitation whatever on a retaining wall is discouragingly vague. Whether the retaining wall may be solid or is to be subjected to the peculiar condition that it shall be "less than 60 per cent solid" is not clear. What is meant by "solid" is not explained. What the restrictions are upon rear line fences are almost as difficult to perceive. The ordinance is well nigh void for uncertainty. *S. v. Crenshaw,* 94 N. C., 877.

It is admitted that a retaining wall along the edges of this lot was necessary. It is not denied that such a retaining wall could have been lawfully constructed to the natural level of the lot, although it is denied that the wall could have been (as it was) constructed lawfully to the height of this wall, a point approximately the same height as the highest point of the lot. There is no contention that the five foot or six foot limitations apply to the height of retaining walls as measured from the street levels; they may be as high as is "necessary." The majority view declares that "as the ordinance expressly excepts any necessary retaining wall," "so much of the wall as extends from the street line to the natural level of petitioner's lot is not prohibited" and "it should be understood that the (judgment) relates only to that portion of the wall which is above the natural level of petitioner's lot." Under this interpretation, where there are retaining walls, the ordinance is treated as prohibiting any portion of the wall rising above the natural level of the lot at the sidewalk edge. Not only does such an interpretation prohibit an owner of a lot which is *above the street level* from having any wall whatever beyond the minimum requirements of a "necessary retaining wall," but it would produce the same result as to owners of lots lying *below the street level.* Thus, owners who have retaining walls will be prohibited from constructing a wall which rises above the natural level of their lots, but citizens not having retaining walls can construct fences rising to five, or even six feet. This result can scarcely be labeled other than arbitrary and discriminating, and is contrary to the settled law of this State. *S. v. Roberson,* 198 N. C., 70 (72), and cases cited.

The ordinance declares, "The set back and yard requirements of this ordinance shall not apply to any necessary retaining wall, *or* to any fence or wall which is less than five feet high and less than 60 per cent solid." In other words, there are two exceptions to these restrictions:

(1) Necessary retaining walls, and (2) walls less than five feet high which are also less than 60 per cent solid. This case is one admittedly involving a retaining wall. Accordingly, a literal interpretation of the ordinance would result in a complete elimination of *all* restrictions as to such necessary walls as the one under consideration, *i.e.,* a retaining wall.

"Zoning ordinances are in derogation of the right of private property, and where exemptions appear in favor of the property owner, they should be liberally construed in favor of such owner." *In re Appeal of Supply Co.,* 202 N. C., 496 (500).

What, then, is a necessary retaining wall? One which is no higher than is reasonably necessary to retain the soil of the lot at the sidewalk edge. How much higher than this may the wall be extended? The ordinance gives no guide except that, by implication only, the five-foot, 60 per cent limit might be read into this exception. Unless persons having retaining walls are to be prohibited entirely from having fences or walls around their properties, by necessary implication they may extend such walls not exceeding five feet above the top of the retaining walls so long as the extended portion is not exceeding 60 per cent solid. Even this interpretation may be subject to the criticism that it is an unreasonable restriction upon the rights of the property owners, but it is certainly one indicating a more sympathetic regard for long-established property rights than does the majority view; and, where such a fence limitation is imposed only upon corner lots at street intersection corners in the interest of public safety, it might well be upheld as a valid ordinance. It is worth noting that no such limitations are involved in the instant case, as the present wall does not corner on the intersection of two streets but merely at the intersection of a street and an alley. As nearly every residence lot has an alley intersecting with a street, ordinances seeking to render more safe vehicular travel in and out of said alleys must be careful not to impose confiscatory restrictions upon the owners of the land merely to the end that drivers of cars and trucks be relieved of the ordinary duties of due care.

"Legislatures may not, under the guise of the police power, impose restrictions that are unnecessary and unreasonable upon the use of private property or the pursuit of useful activities." *Seattle Trust Co. v. Roberge,* 278 U. S., 116 (121), and cases cited. "It is also fundamental that such power must be exercised so as not to infringe arbitrarily or unnecessarily upon private rights." *Downey v. Sioux City,* 208 Iowa, 1273, 1276, 227 N. W., 125, 126-7; 43 C. J., sec. 230, p. 230. "Laws enacted in the exercise of the police power, whether by municipal corporations acting in pursuance of the laws of the state or by the state itself, must be reasonable, and are always subject to the provisions of both the Federal and state constitutions, and they are always subject to

judicial scrutiny." *McCray v. City of Chicago*, 292 Ill., 60, 126 N. E., 557, cited with approval in *Bettey v. City of Sidney*, 79 Mont., 314, 257 Pac., 1007, 1009.

Whether or not an ordinance is reasonable is a matter subject to determination in the courts. The reasonableness of an ordinance is a question of law for the court. *Hawes v. City of Chicago*, 158 Ill., 653, 42 N. E., 373; *Continental Oil Co. v. City of Twin Falls*, 49 Idaho, 89, 286 Pac., 353; 2 McQuillan, Mun. Corp., Second Ed., p. 860. An ordinance will be declared void by the courts "because unreasonable upon a state of facts being shown which makes it unreasonable." 2 Dillon, Mun. Corp., 5th Ed., sec. 581, quoted with approval in *Bettey v. City of Sidney, supra*. The rule as to reasonableness and the power of the courts to pass upon this element in ordinances is summarized, after a review of the authorities, as follows, in *Mayor and Council of Pocamoke City v. Standard Oil Co.*, 162 Md., 368, 159 Atl., 902 (906): "(1) That restrictions imposed by the state or some agency of the state upon the use of private property cannot be justified under the police power unless they are *reasonably necessary* for the adequate protection of the public welfare, safety, health, comfort, or morals; (2) that whether such restrictions are reasonable in fact is a judicial question. . . ." In *Wonrak v. Kelley*, 129 Ohio St., 268, 195 N. E., 65, the Court declared void an ordinance limiting the height of fences and in doing so concluded with these words, which are, in my opinion, appropriate here: "The ordinance here under consideration has no real or substantial relation to the needs of the public health, morals, welfare, or public safety, and it is unreasonable and arbitrary in character. It unduly invades the right which the property owner has in his property . . ."

As interpreted by the majority, the instant ordinance, in my opinion, is unreasonable and void in that (1) it bears no substantial relation to the public health, safety, morals, or general welfare, and (2) is an unwarranted and arbitrary restriction upon the essential and fundamental rights of residence owners. Further, in ordering the destruction of part of petitioner's wall, in my opinion, petitioner is deprived of property without compensation. "We must avoid the belief that under the police power 'all private property is held subject to the temporary and passing phases of public opinion, dominant for a day, in legislative or municipal assemblies.' . . . Not only do our constitutions, Federal and state, forbid the taking of private property without just compensation, but the consensus of opinion throughout the land cries out against such unfair, arbitrary, oppressive action entirely out of harmony with the spirit of just government." 3 McQuillan, Mun. Corp., Second Ed., p. 359. In the instant case it is not denied that the petitioner would have the right to fill in his lot to the level of the highest point of that lot, yet he is

prohibited from building a fence or wall which at its highest point above the street level is nearly five feet lower than the highest point of his lot. An ordinance which permits appellant's wall to stand provided he fill his back yard with dirt but condemns it if he leave it a garden, rests upon no solid foundation. It is further observed that the zoning ordinance does not require a permit for the construction of the wall. The authority of the inspector to condemn it finds no sanction in the law. This proceeding, therefore, should be dismissed as nugatory.

In constructing such a wall in the interest of the privacy and safety of his home it seems to me that he has but exercised the inalienable rights granted to every man in the protection of his "castle." Those rights I consider so well grounded in our system of government and the political tradition of our people that they are secure alike from interference by individual or government. I cannot put from my mind that which I have through most of my four-score years regarded as fundamental—free governments primarily exist for the protection of the rights of the individual governed, not for the destruction of those rights. If this ordinance is valid, then a privet, spruce or white pine hedge around, or partly around, a man's home could be destroyed by the whim of a municipality inclined to nervous particularity bordering on absurdities.