**HOME BUILDING CONTRACTORS, INC., a Missouri corporation, Plaintiff-Appellant,**

v.

**The COUNTY OF DU PAGE, an Illinois body politic and corporate, Elbert Drogemueller and Robert S. Stuart, Defendants-Appellees.**

No. 14111.

United States Court of Appeals
Seventh Circuit.

Sept. 17, 1963.

636

Maurice R. Kraines, Chicago, Ill., for appellant.

William J. Bauer, State's Atty., Wheaton, Ill., Donald J. Hennessy, Sp. Asst. State's Atty., Naperville, Ill., for appellee.

Before HASTINGS, Chief Judge, and DUFFY and SCHNACKENBERG, Circuit Judges.

DUFFY, Circuit Judge.

Plaintiff is a Missouri corporation. It is engaged in the sale and distribution of prefabricated homes in the State of Missouri and in several other states including Illinois. The prefabricated homes are manufactured in Missouri by Home Building Corporation with which plaintiff is affiliated. In the complaint and in the trial, plaintiff's homes are referred to as H.B.C. homes.

The complaint seeks a declaratory judgment a) that H.B.C. homes meet the requirements of the building ordinance of the County of Du Page, and b) that the Court determine the rights and obligations of the parties with respect to inspection of plaintiff's homes by defendant County, by defendant Drogemueller who is the "Building Official" referred to in the County ordinance, and by defendant Stuart who is the "Director" of the Building and Zoning Department of Du Page County. The complaint further asks that the defendants be directed by the Court to issue building permits for the plaintiff's homes.

Four residents of Du Page County sought building permits to erect five H.B.C. prefabricated homes, but the permits were denied. The average price for an H.B.C. home is $8,000. It is admitted that if permitted to build, plaintiff could have sold at least twenty of its prefabricated homes in Du Page County.

Section 300 of the Du Page County building code permits the use of "other material and methods" when the Building Official is satisfied "that their performance in use will be at least equivalent to that of the materials and methods specified herein." This section also specifies various kinds of loads and lifting forces in terms of pounds per square foot and heat and vapor requirements in terms of B.T.U.'s and perms of permeability. The section also provided " * * the Building Official may require work in excess of these requirements. * * "

The walls of H.B.C. homes are completely finished units and are called panels. They are eight feet in height and from twelve to sixteen feet in length. The structural framework of a panel consists of assembled four by four inch posts, with top and bottom plates, assembled in a post and beam construction. The four by four inch posts are spaced at four foot intervals. Between each post, at two foot intervals, are two by four inch boards which are not weight bearing.

At the factory in Missouri, each of these members was cut to size, then assembled in large steel jigs and nailed and glued together. Glue was then applied to the exterior of this framing and the exterior plywood was laid thereon and nailed to the frames at four or five inch intervals. The panel was then turned over and the dry wall nailed and glued to the other side of the frame. Surfaces were then painted and window sash and trim affixed. The panels were then loaded on to a truck to be taken to the site where the house was to be erected.

The roof panels are also completely finished units. Each has a frame consisting of two by four inch lumber. Two by four inch purlins make compartments into which insulation is placed. Roofing material is fastened to one side of the frame and ⅜ inch foil-back sheet rock is fastened to the under side of the frame. Foil-back sheet rock is a sheet rock to which aluminum foil is glued and is designed to act as a vapor barrier. The aluminum foil backing faces the interior of the roof panel.

Stuart, Director of the County's Building and Zoning Department, insisted upon a visual inspection of plaintiff's wall and roof panels. This would require the removal of the sheet rock which was glued to the frame. Stuart insisted that there was no practical way to visually inspect the framing of the structure.

Plaintiff offered to permit defendants to test check its panels. It offered to pay the expenses of an inspector to visit its plant in Missouri and observe the manner in which the panels were constructed. It offered to post a bond of unstated amount. However, defendants insisted upon visual inspections.

In the District Court the issues submitted were:

1) Plaintiff's proposed use of 2 x 4's at 24″ on center in panel walls in place of 2 x 4's at 16″ on center as required by the Ordinance;

2) Plaintiff's proposed use of ¾″ plywood on garage roof rafters 48″ on center in place of ½″ plywood on rafters 24″ on center as required by the Ordinance;

3) Plaintiff's proposed use of panel walls in place of corner bracing as required by the Ordinance;

4) Plaintiff's proposed use of roof panels with aluminum foil vapor barrier without providing for confined roof space ventilation as required by the Ordinance; and

5) Plaintiff's proposed use of 1 x 4's fastened to a 2 x 4 as the equivalent of a solid 4 x 4 post in conventional construction under the Ordinance.

In addition, plaintiff proposed spot check inspection in place of visual inspection of structural members as required by the Ordinance.

The District Court made findings of fact and concluded plaintiff failed to prove by a preponderance of the evidence that the H.B.C. homes met, or were equivalent to the requirements of the Building Ordinance of Du Page County on the issues hereinbefore stated. Judgment was entered dismissing the complaint.

On this appeal, plaintiff admits that the principal issue is that of visual inspection. On oral argument, plaintiff's counsel suggested a tearing apart of 10% of the panels on the job so that an inspection could be made.

■■ We agree with plaintiff's argument that a building code should be reasonably related to the goals of public health, safety and welfare. We also agree that the exercise of the police power cannot be used as a cloak to prevent the use of new materials and methods of construction merely because they are new, and may displace older methods and materials.

Plaintiff complains the objections made by defendants to its houses are arbitrary and capricious; that defendants' attitude is a block on the road to progress. Plaintiff contends the situation here is comparable to that in McCray v. Chicago, 292 Ill. 60, 126 N.E. 557, where it was held that plasterboard, which was as

sanitary and fire-resistant as lath and plaster, could not be barred from use in building projects in Chicago.

Plaintiff also cites People ex rel. Brewer v. Kelly, 295 Ill.App. 156, 14 N.E.2d 694, where the code made no provision for casement windows. The Court found that casement windows admitted as much light and air as conventional double-hung windows, and held the municipality could not prohibit the use of casement windows.

However, the big issue before us is not that of materials. It is the question of inspection and the manner in which certain materials were used.

Defendants state that they are not against prefabricated houses, as such, and point out that other builders of prefabricated houses are operating in Du Page County, but assert that such builders are doing so in such a manner that the "structure" can be inspected.

The wall and roof panels of plaintiff's houses do become a part of the "structure." When they are delivered on the site of the building to be constructed, there is no way, other than tearing the panels apart, for the defendants to know 1) the size of the lumber and framing in the wall and roof sections; 2) the quality and condition of the materials used; 3) the quality of the workmanship; 4) the manner in which hundreds of junctions of framing were made; 5) corner bracing; and other matters in which an inspector would be interested.

Spot inspections as proposed by plaintiff would not seem to be adequate. There is no expert testimony that hammer sounds, nail holes and drill holes to allow inspection is "equal to or superior to" the defendant County's code. Also, spot checking by removal of the entire side of a panel is not practical as these sides arrive glued to the frame and can be removed only with great difficulty.

Defendants assert that a visual inspection is not impossible. They suggest plaintiff could leave the inside wall off until after the structural inspection on the building site. They point out that other prefabricated builders follow such a practice.

 In our view, the District Court was correct in holding that plaintiff failed to prove its case on the inspection issue as well as on the structural issues. We have considered other claims of plaintiff, but we think they are without merit.

The judgment of the District Court dismissing the complaint herein is

Affirmed.