BETTEY, Appellant, *v.* CITY OF SIDNEY, Respondent.

(No. 6,101.)

(Submitted April 22, 1927.  Decided May 7, 1927.)

[257 Pac. 1007.]

*Injunction—Cities and Towns—Fire Limits—Repair of Damaged Buildings—Ordinance—When Void as Unreasonable—Police Power—Constitutional Law—Due Process of Law Clause.*

Cities and Towns—Fire Limits—Limit of Power of City Council.
    1.  While a city or town may, under section 5039, subdivision 26, Revised Codes of 1921, by ordinance wholly forbid the erection of wooden buildings within fire limits, it is without power to wholly prohibit the repair of a building lawfully erected prior to the creation of fire limits including the building therein, an ordinance so declaring being unreasonable.

Constitutional Law—Depriving Person of Property Without Due Process of Law—What may Constitute.
    2.  The constitutional guaranty that no person shall be deprived of his property without due process of law may be violated without the physical taking of it for public or private use; any law which destroys its use or value results in depriving the owner of it.

Same—Cities and Towns—Exercise of Police Power—Ordinances must be Reasonable.
    3.  Laws enacted in the exercise of the police power, whether by municipal corporations acting in pursuance of the laws of the state or by the state itself, must be reasonable, and are always subject to the provisions of both the federal and state Constitutions and judicial scrutiny.

Same—Reasonableness of Ordinances Primarily Question for City Council—Presumption.
    4.  The question of the reasonableness of an ordinance is, in the first instance, for the determination of a city or town council, and in the absence of a clear showing to the contrary its reasonableness will be presumed.

Same—Fire Limits—Statutory Provisions—Strict Construction in Favor of Property Owner.
    5.  Statutory provisions giving municipal corporations power to prescribe fire limits and direct the removal of buildings therein which are damaged to a certain extent should receive a strict construction in favor of their owners.

Same—Fire Limits—Repair of Damaged Buildings—Ordinance Depriving Council of Discretion *Held* Unreasonable.
    6.  *Held*, that while a city may exercise reasonable control over the making of repairs on wooden buildings within fire limits, even though

    2.  See 6 R. C. L. 473.
    3.  See 6 R. C. L. 244.
    4.  See 19 R. C. L. 808.

they were lawfully erected prior to the creation of the district, and may prevent repairs increasing fire hazards or creating nuisances, an ordinance which arbitrarily deprives the city council of any right to exercise its discretion in granting an owner the right to make repairs if the damage exceeds a certain percentage of its value, is not reasonable unless the damage is so great as to require a practical reconstruction of the building.

Same—Fire Limits—Repair of Damaged Buildings—Further Unreasonable Provisions.

7. A city ordinance which arbitrarily makes the right of an owner of a damaged building to make repairs thereon dependent upon its assessed value, instead of its actual value, and exacting an undertaking in the sum of $3,000 regardless of the expense entailed to make the repairs, *held* unreasonable.

---

[1]　Municipal Corporations, 43 C. J., sec. 229, p. 229, n. 70; sec. 439, p. 368, n. 67, 68, p. 369, n. 70, 72; sec. 440, p. 369, n. 83.
　[2]　Constitutional Law, 12 C. J., sec. 991, p. 1215, n. 92, 93.
　[3]　Constitutional Law, 12 C. J., sec. 440, p. 928, n. 13, p. 929, n. 20; sec. 443, p. 933, n. 41, p. 934, n. 47.
　[4]　Constitutional Law, 12 C. J., sec. 443, p. 934, n. 48. Municipal Corporations, 43 C. J., sec. 323, p. 310, n. 94.
　[5]. Municipal Corporations, 43 C. J., sec. 439, p. 369, n. 81.
　[6, 7]　Municipal Corporations, 43 C. J., sec. 439, p. 369, n. 72.

*Appeal from District Court, Richland County; Robert C. Stong, Judge.*

Suit by Lucille Bettey against the City of Sidney. From a judgment of dismissal plaintiff appeals. Reversed and remanded, with direction to enter judgment for plaintiff.

Cause submitted on briefs of Counsel.

*Mr. L. V. Ketter,* for Appellant.

*Mr. F. J. Matoushek,* for Respondent.

MR. CHIEF JUSTICE CALLAWAY delivered the opinion of the court.

The plaintiff brought this suit against the city of Sidney asking the court to declare null and void a city ordinance, and to restrain the city from interfering with plaintiff in making repairs upon her building damaged by fire. It appears from the complaint that on January 7, 1926, fire, originating in another building, burned, scorched and charred some of the

wooden studding, top sills, rafters and part of the roof of plaintiff's building. In order to make repairs the parts damaged will have to be replaced and a few sheets of metal siding supplied; otherwise the building is in good serviceable condition. The cost of making the repairs will be $800. The actual value of the building at the time of the fire was $4,200. Its value as entered on the last assessment-roll of Richland county was $1,800. The damage done to the building by the fire is 19.04 per cent of the actual value and 44.44 per cent of the assessed value. On January 18, 1926, the city council of Sidney enacted and the mayor approved an ordinance establishing fire limits within the city "and regulating the construction, repairs and moving of all buildings within such fire limits; defining the boundaries of such fire limits, and providing penalty for the violation of this ordinance." Section 1 recites that for the purpose of minimizing the danger and protecting property from fire within the city limits, a fire district is created, the limits of which are described. Plaintiff's property is within the district. Section 4 prohibits the erection of wooden buildings in the district, and section 5 provides in part that it shall be unlawful to repair, change or alter any wooden or frame building within the fire limits if in the opinion of the majority of the city council "such building has been damaged from any cause to the extent of thirty-five per cent of the value of such building according to the last assessment roll of the county of Richland; and any such building shall be torn down and removed, if in a dangerous condition, when so ordered by said city council."

It is provided that repair of wooden buildings within the fire limits, the cost of which will not exceed $25, may be made without notice to or the permission of the council, with certain exceptions. Section 6 declares that "no building shall, after the passage and approval of this ordinance, be erected, enlarged, repaired, changed or moved within the fire limits of said city of Sidney until a permit for the erection, enlarging, repairing, changing or moving of such building shall have first been ob-

tained from the city council of said city of Sidney; which permit shall be issued and recorded by the city clerk," and that before permit is issued the owner of the building shall give to the city a bond or undertaking in the sum of $3,000 with good and sufficient sureties, to be approved by the city council, "conditioned among other things that the owner or owners of such building, their agents and employees, will pay any and all damages which may be caused to any property, either private or public, within said city of Sidney, and conditioned also, that the owner or owners of such building, their agents or employees, will save and indemnify and keep harmless the city of Sidney against all liabilities, judgments, costs and expenses which may in anywise accrue against said city of Sidney on account of the granting of such permit, or which may result from the acts of such owner or owners, or their agents or employees on account of the work of such building, repair, alteration, change or moving thereof." Section 7 provides penalties for a violation of the ordinance.

It is alleged that plaintiff desires to make the necessary repairs on the building but the city threatens to prevent her from doing so, and has threatened to arrest her if she attempts to do so, and threatens to declare the building a nuisance and to order its destruction or removal even though it be repaired, and the city threatens to tear down and remove the same if plaintiff does not do so when so ordered by the city council; because of these threats plaintiff has been prevented from repairing the building. The city's demurrer to the complaint was sustained, and plaintiff refusing to plead further, judgment was entered dismissing the complaint. From this judgment the plaintiff has appealed.

The plaintiff contends that the ordinance deprives her of her property without due process of law, contrary to Article XIV of the Constitution of the United States, and section 27 of Article III of the Constitution of Montana.

Municipal corporations, under the powers usually conferred [1] upon them, may prohibit the erection of wooden buildings

within prescribed fire limits. "Many cases hold that the power to make such regulations is inherent in the municipal corporation and is implied from its mere creation. Some cases have denied that the power arises by implication." (McQuillin on Municipal Corporations, sec. 948.)

The power is expressly conferred in Montana. Section 5039, Revised Codes 1921, provides in part: "A city or town council has power: * * * 26. For the purpose of guarding against fire to prescribe the limits within which wooden or combustible buildings must not be erected, placed or repaired and to establish fire limits within the city or town."

That under this statute a city may enact an ordinance wholly forbidding the erection of wooden buildings within fire limits is undoubted. But may the city wholly prohibit the repair of a building lawfully erected and existing before the' creation of fire limits and the inclusion of the building therein? The statute does not place any limitation upon the city's power in this respect. If the power is limitless, the city may prohibit any repairs upon a wooden building, no matter how inconsequential. But this cannot be. An ordinance so declaring would be unreasonable. Its operation in many instances would be oppressive. If but a small portion of the roof of plaintiff's house were damaged, but to such an extent as to admit the rain, the house might be rendered untenantable and practically useless without repair. An expense of fifty dollars might fully repair the damage. If the city could prevent the repair, plaintiff would lose the use of her building; her loss virtually (if not, indeed, actually) would be total (*Hamburg-Bremen Fire Ins. Co.* v. *Garlington*, 66 Tex. 103, 59 Am. Rep. 613, 18 S. W. 337; Mr. Justice Campbell in *Brady* v. *North Western Ins. Co.*, 11 Mich. 425; *Larkin* v. *Glens Falls Ins. Co.*, 80 Minn. 527, 81 Am. St. Rep. 286, 83 N. W. 409); the city's action would amount to depriving plaintiff of her property without compensation.

"The constitutional guaranty that no person shall be de-
[2]    prived of his property without due process of law may

be violated without the physical taking of property for public or private use. Property may be destroyed, or its value may be annihilated; it is owned and kept for some useful purpose and it has no value unless it can be used. Its capability for enjoyment and adaptability to some use are essential characteristics and attributes without which property cannot be conceived; and hence any law which destroys it or its value, or takes away any of its essential attributes, deprives the owner of his property." (*Matter of Application of Jacobs*, 98 N. Y. 98, 50 Am. Rep. 636.)

"Laws enacted in the exercise of the police power, whether [3] by municipal corporations acting in pursuance of the laws of the state or by the state itself, must be reasonable, and are always subject to the provisions of both the federal and state constitutions, and they are always subject to judicial scrutiny." (*McCray* v. *City of Chicago*, 292 Ill. 60, 126 N. E. 557; 6 R. C. L. 244.)

The question of the reasonableness of the ordinance was in [4] the first instance for the determination of the city council, and in the absence of a clear showing to the contrary its reasonableness will be presumed. (*City of Butte* v. *Paltrovich*, 30 Mont. 18, 104 Am. St. Rep. 698, 75 Pac. 521; *McCray* v. *City of Chicago*, supra.) "The power of the court to declare an ordinance void because it is unreasonable is one which must be carefully exercised. When the ordinance is within the grant of power conferred upon the municipality, *the presumption is* that it is reasonable unless its unreasonable character appears upon its face. But the courts will declare an ordinance to be void because unreasonable *upon a state of facts being shown* which makes it unreasonable." (2 Dillon on Municipal Corporations, 5th ed., sec. 591.)

The cases hold without exception, so far as we are aware, that minor repairs upon wooden buildings cannot be prohibited. As to major repairs, those which amount to a large percentage of the value of the buildings, the authorities are not altogether in harmony. In the note to *Crossman* v. *City of Galveston*, 112 Tex. 303, 26 A. L. R. 1220, 247 S. W. 810, it is said: "Of

course, no fixed percentage can be indicated as the point at which repairs cease to be of a minor nature which cannot be prohibited, but ordinances have sometimes prohibited repairs exceeding a certain percentage value of the building, as thirty or fifty per cent. It would seem that repairs even of a much smaller nature, may, according to some of the authorities, be prohibited."

A distinction is made between repairs upon buildings lawfully erected before inclusion within the fire limits and those created thereafter. Those who erect buildings within a fire district must be held to have done so in contemplation of ordinances governing the same.

In the well-considered case of *Russell* v. *City of Fargo*, 28 N. D. 300, 148 N. W. 610, the court said: "It must be remembered also that a very different rule applies to buildings erected before the enactment of the ordinances fixing the fire limits, from that applicable to those erected subsequent to the passage of such ordinances. Statutory provisions giving municipal corporations power to prescribe fire limits and direct the removal of buildings therein, which may be damaged to a certain extent, should receive a strict construction in favor of the owners of such buildings. (*Louisville* v. *Webster*, 108 Ill. 414; *McEwan* v. *Gilker*, 38 Ind. 235; *Hooper* v. *Emery*, 14 Me. 375; *Robb* v. *Indianapolis*, 38 Ind. 51; *Frank* v. *Atlanta*, 72 Ga. 428; Wood, Nuisances, sec. 738.) When the law gives city officials the power to remove a building erected within the fire limits in violation of the statute or ordinance, the power to compel the removal of the building grows solely from the fact that its erection was in violation of the ordinance, and not because it is a nuisance; and the power to abate nuisances does not warrant destruction of valuable property, which was lawfully erected, or anything which was erected by lawful authority; and the power to do so, when given by the legislature, is held to be inoperative and void, unless the thing is in fact a nuisance, or was created or erected after the passage of the ordinance, and in defiance of it. This is the distinction between the rights of the city regarding buildings erected before the

fire limits were established and those subsequently built. (Wood, Nuisances, 823; *First Nat. Bank* v. *Sarlls,* 129 Ind. 201, 28 Am. St. Rep. 185, 13 L. R. A. 481, 26 N. E. 434.)''

In *Crossman* v. *City of Galveston,* supra, the court said: ''The building having been lawfully erected before its locality was included within the fire limits, it could not, merely because of wooden construction, be condemned as a nuisance, nor could the right of repair be denied unless the repair should amount to a substantial reconstruction of the building.''

But even as to buildings lawfully erected and existing when [6] included within the fire limits it may not be doubted that cities may exercise a reasonable control over the making of repairs, and may prevent repairs which will increase fire hazards or create nuisances. But an ordinance which arbitrarily deprives the city council of the right to exercise its discretion in granting the owner of the building the right to repair if it has been damaged to exceed a certain percentage of its value, unless the loss is so great as to require a practical reconstruction of the building, is not reasonable. The municipality may require the property owners to obtain a permit before proceeding with his repairs. It may prescribe reasonable regulations as to how the repairs shall be made and within reasonable limitations the character of the material which shall be used. It may fix a point at which the council in its discretion may reasonably refuse to grant a permit for the repair. But it is a fallacious notion that a building not so seriously damaged that its repair will entail practical reconstruction may be doomed to go to rack and ruin, thus becoming a nuisance.

As the court said in *First National Bank* v. *Sarlls,* supra: ''If it is lawful to maintain it without repairs, how can the police power afford any justification for a refusal to allow its owner to remedy the effects of accident or decay and restore it to a sound condition? To hold that this was a proper exercise of the police power would be to pervert entirely the use of that power which is designed to protect society and prevent the doing of things inimical to its well-being. Such an ordinance might in many cases compel the owner of valuable prop-

erty to stand by and allow it to become valueless, and a nuisance, without the power to prevent it.''

The ordinance at bar does not base its percentage upon the [7] true value of the building but upon its value "according to the last assessment-roll of the county of Richland.'' That an assessment-roll is not a true criterion of value everybody knows. "All taxable property must be assessed at its full cash value,'' according to the statute (sec. 2001, Rev. Codes 1921). The fallibility of human action is exposed, to a greater or less extent, in every tax roll. Some property is assessed too high, some too low. In this case it is admitted that the actual value of the property is $4,200, while the assessed value is $1,800. This ordinance arbitrarily denies to the city council the right to exercise its discretion in the matter of issuing a permit where the damage is thirty-five per cent of the *assessed* value. Clearly the ordinance upon this feature is arbitrary and unreasonable.

Nor can we sustain the provision of the ordinance which requires the owner of the building, before the permit is issued, to give to the city an undertaking in the sum of $3,000. Conceding that it is within the power of the city council to require a bond suitable to the conditions which obtain, it cannot be admitted that a $3,000 bond may be required in every case. Suppose, for instance, that a repair entailing an expense of $35 must be made upon the roof of a one-story wooden building—can any condition be supposed which would justify the requirement of a $3,000 bond before the owner is permitted to undertake the repair? Numerous other examples might be cited under which it cannot be imagined that the city could be liable. Why, then, should a bond be required in such case? The unreasonableness of this provision of the ordinance is too clear for argument.

It follows that the court was in error in sustaining the demurrer and entering judgment in favor of the city. As to the plaintiff the ordinance, in the particulars noted, is inoperative, and therefore the city can have no defense against the

action brought.   The plaintiff is entitled to judgment in accordance with the prayer of her complaint.

The judgment is reversed and the cause is remanded, with the direction that the district court of Richland county enter judgment in favor of the plaintiff.

*Reversed and remanded, with direction.*

ASSOCIATE JUSTICES MYERS, STARK, MATTHEWS and GALEN concur.