BILLINGS PROPERTIES, INC., Plaintiff and Appellant, v. YELLOWSTONE COUNTY, et al., Defendants and Respondents.

No. 10577

Submitted April 6, 1964. Decided July 16, 1964.

394 P.2d 182

Sandall, Moses & Cavan, Billings, John P. Acher, Great Falls, James L. Sandall (argued), Billings, for appellant.

William J. Speare, County Atty., C. W. Jones, Deputy County Atty. (argued), Billings, Forrest H. Anderson, Helena, for respondents.

MR. JUSTICE JOHN C. HARRISON delivered the Opinion of the Court.

This is an appeal from a judgment of the district court of the thirteenth judicial district, in and for the County of Yellowstone, in favor of the defendants. Plaintiff, Billings Properties, Inc., a corporation, has brought this appeal.

This suit was brought under the Uniform Declaratory Judgments Act, §§ 93-8901 et seq., R.C.M.1947, for the purpose of securing a judicial determination of the validity of section 11-602, subd. 9, R.C.M.1947, and the meaning of section 11-614, R.C.M.1947. The plaintiff below is a corporation which owns real estate in Yellowstone County and desires to subdivide property and sell the land in small tracts. The defendants are Yellowstone County, the individual Commissioners of said County constituting the Board of County Commissioners and the Billings-Yellowstone City-County Planning Board.

The cause was submitted to the court below upon an agreed statement of facts. Essentially, the facts are that the plaintiff, engaged in the business of subdividing and selling real property, caused a survey to be made, and plats prepared of certain described real property in Yellowstone County. These plats, referred to as Parcel A (containing 11.261 acres), and Parcel B (containing 1.252 acres), were prepared for the purpose of complying with sections 11-601, 11-608, 11-614 and 11-614.1, R.C.M. 1947. Prior to commencing this action the plaintiff caused these plats to be filed in duplicate with the Planning Board and with the County Commissioners, together with a request for their approval. There was also submitted with said plats, an abstract of title to each plat, prepared and certified by a duly qualified abstracter. The abstracts were submitted to the office of the County Attorney of Yellowstone County, which office endorsed on the plats that the plaintiff was the owner in fee simple of the lands so platted. The plats conformed in all respects to the requirements of the Montana statutes, except that neither plat contained any dedication of land for parks and

playground purposes as is required by section 11-602, subd. 9, R.C.M.1947.

On June 4, 1962, the Planning Board rejected both plats for the reason that no dedication of land was made therein for parks and playgrounds, and on June 15, 1962, the Board of County Commissioners rejected the plats for the same reason.

On June 20, 1962, the plaintiff brought its action in district court; the facts were stipulated to by the parties, and the matter was submitted on briefs. On January 10, 1963, the district court found that the statute in question did not contravene the provisions of section 14, Article III, of the Montana Constitution nor the Fourteenth Amendment to the Constitution of the United States. The court also found that section 11-602 was not an unconstitutional delegation of legislative authority in contravention to section 1, Article IV, of the Montana Constitution. Finally the court found that section 11-614 taken in connection with section 11-614.1 did not exempt the plaintiff from dedicating any land for park and playground purposes merely because it was a tract less than ten acres in area.

The plaintiff (hereinafter referred to as appellant) alleges five separate specifications of error, however, these can be resolved into three basic contentions, which will be handled separately. The first two relate to the constitutionality of section 11-602, subd. 9, and the third concerns the interpretation to be given to section 11-614.

Appellant's first contention is that the requirement that land must be dedicated to the public for park and playground purposes as a condition precedent to the approval of a subdivision plat is unconstitutional in that it is an exercise of the power of eminent domain without provision for compensation under the guise of the police power.

We will first discuss areas over ten acres and under twenty acres. The pertinent language of section 11-602, subd. 9, the statute in question, reads as follows:

"For the purpose of promoting the public comfort, welfare,

and safety, such plat and survey must show that at least one-ninth of the platted area, exclusive of streets, alleys, avenues, and highways, is forever dedicated to the public for parks and playgrounds; the one-half of such area so dedicated to the public for parks and playgrounds may be distributed in small plots of not less than one block in area through the different parts of the area platted; and the one-half shall be consecrated into larger parks on the outer edge of the area so platted. The board of county commissioners of the county, or the council of the city or town, is hereby authorized to suggest suitable places for such parks and playgrounds, and for good cause shown may make an order in the proceedings of such body (to be indorsed and certified on said plat), diminishing the amount of such area herein required to be dedicated as public parks and playgrounds to not less than one-twelfth thereof, exclusive of streets, alleys, avenues, and highways; provided, that where such platted area consists of a tract of land containing less than twenty acres, such board of county commissioners of the county, or the council of the city or town, may make an order in the proceedings of such body, to be indorsed and certified on said plat, that no park or playground be set aside or dedicated."

This subdivision 9 of section 11-602, was passed as an amendment to the original statute in the Fifteenth Legislative Session in 1917. A check of the House and Senate Journals for that session reveals that it went through both houses with but one dissenting vote and that significantly enough was by the Senator from Yellowstone County. From that date until the present suit, there has never been a case even remotely questioning its constitutionality, however, that has no bearing on the ultimate question. Statutes requiring dedication of park and playground land as a condition precedent to the approval of plats are in force in one form or another in most all states. The question of their constitutionality on the ground that it amounts to a taking of property without compensation under

the guise of the police power has not, to the best of our knowledge, been met head on. The cases cited in appellant's brief have not passed upon the constitutionality of these statutes on this particular ground as will be pointed out later in this opinion.

The task of deciding whether a statute is constitutional or not is not an easy one, due to the fact that the ultimate question of its constitutionality is oft times clouded by opinions as to the wisdom of the legislation. It is for this reason that we think that this rule has been laid down again and again:

"An act of the legislature is presumed to be valid; every intendment is in favor of upholding its constitutionality; it will not be condemned unless its invalidity is shown beyond a reasonable doubt; but when it appears that an act manifestly violates a constitutional guaranty, the court will not hesitate to pronounce the act void. Gas Products Co. v. Rankin, 63 Mont. 372, 207 P. 993 [24 A.L.R. 294]; Hale v. County Treasurer, 82 Mont. 98, 265 P. 6.

"Unless there is a clear and palpable abuse of power a court will not substitute its judgment for legislative discretion. Local authorities are presumed to be familiar with local conditions and to know the needs of the community. Allion v. City of Toledo, 99 Ohio St. 416, 124 N.E. 237, 6 A.L.R. 426, and exhaustive note." State v. Gateway Mortuaries, Inc., 87 Mont. 225, 235, 287 P. 156, 158, 68 A.L.R. 1512.

Section 11-602, subd. 9, in effect requires a person who desires to subdivide and sell his property from approved plats to dedicate a portion thereof to the public for parks and playgrounds, without compensation therefor. The language of the statute obviously contemplates that this be done pursuant to the police power of the state.

The "police power" of the State of Montana is contained in Article XV, § 9, of the Constitution which states only that "the police powers of the state shall never be abridged."

An exact definition of the phrase "police power" is not only impossible but also impractical. As Mr. Justice Douglas stated in the case of Berman v. Parker, 348 U.S. 26, 32, 75 S.Ct. 98, 102, 99 L.Ed. 27, concerning the definition of "police power":

"* * * An attempt to define its reach or trace its outer limits is fruitless, for each case must turn on its own facts. The definition is essentially the product of legislative determinations addressed to the purposes of government, purposes neither abstractly nor historically capable of complete definition. Subject to specific constitutional limitations, when the legislature has spoken, the public interest has been declared in terms well-nigh conclusive. In such cases the legislature, not the judiciary, is the main guardian of the public needs to be served by social legislation, whether it be Congress legislating concerning the District of Columbia [Citing case.] or the States legislating concerning local affairs. * * *

"Public safety, public health, morality, peace and quiet, law and order—these are some of the more conspicuous examples of the traditional application of the police power to municipal affairs. Yet they merely illustrate the scope of the power and do not delimit it."

The exercise of the police power is gauged by a standard of reasonableness. In Bettey v. City of Sidney, 79 Mont. 314, 257 P. 1007, 56 A.L.R. 872, this court, quoting from McCray v. City of Chicago, 292 Ill. 60, 126 N.E. 557, declared that:

" 'Laws enacted in the exercise of the police power, whether by municipal corporations acting in pursuance of the laws of the state or by the state itself, must be reasonable, and are always subject to the provisions of both the federal and state Constitutions, and they are always subject to judicial scrutiny.' "

In gauging the reasonableness of the statute in question, we must not look back solely to past precedents, but must also look ahead. The Supreme Court of California in Miller v. Board of Public Works of City of Los Angeles, 195 Cal. 477, 484, 234 P. 381, 383, 38 A.L.R. 1479, put it in this manner:

"In short, the police power, as such is not confined within the narrow circumspection of precedents, resting upon past conditions which do not cover and control present day conditions obviously calling for revised regulations to promote the health, safety, morals, or general welfare of the public; that is to say, as a commonwealth develops politically, economically and socially, the police power likewise develops, within reason, to meet the changed and changing conditions. What was at one time regarded as an improper exercise of the police power may now, because of changed living conditions, be recognized as a legitimate exercise of that power. * * *

"* * * Thus it is apparent that the police power is not a circumscribed prerogative, but is elastic and, in keeping with the growth of knowledge and the belief in the popular mind of the need for its application, capable of expansion to meet existing conditions of modern life, and thereby keep pace with the social, economic, moral, and intellectual evolution of the human race. In brief, 'there is nothing known to the law that keeps more in step with human progress than does the exercise of this power.' "

It is with these aforementioned precepts in mind that we have viewed this statute. This court is of the opinion that the requirement that the subdivider dedicate a portion of his land for parks and playgrounds as a condition precedent to approval of the plat is not an unreasonable exercise of the police power.

First of all, it should be noted that appellant's act of attempting to secure approval of the plat was voluntary. There is no law requiring it to subdivide and sell its land by plat. The Michigan court in response to the same argument presented here, that is, that the state is not really exercising the police power, but is really exercising the power of eminent domain, had this to say:

"The error in plaintiff's position is the assumption that, in requiring an additional dedication and the establishment of a building line to conform to its general plan, the city is exer-

cising power of eminent domain. Its argument would have merit, and the authorities cited would have application, if this were a case where the plat had been recorded and the city were undertaking to widen the streets or to establish a building line. But this is not such a case. Here the city is not trying to compel a dedication. It cannot compel the plaintiff to subdivide its property or to dedicate any part of it for streets. It can, however, impose any reasonable condition which must be complied with before the subdivision is accepted for record. In theory at least, the owner of a subdivision voluntarily dedicates sufficient land for streets in return for the advantage and privilege of having his plat recorded." Ridgefield Land Co. v. City of Detroit, 241 Mich. 468, 472, 217 N.W. 58, 59; Newton v. American Sec. Co., 201 Ark. 943, 148 S.W.2d 311; Ross v. Goodfellow, 7 App.D.C. 1.

Appellant admits that a statute requiring dedication of ground for streets and alleys would be valid, but insists that parks and playgrounds are inherently different. With this contention we cannot agree.

Appellant does not deny the need for parks and playgrounds, however, it would require the city to purchase or condemn land for their establishment. But this court is of the opinion that if the subdivision creates the specific need for such parks and playgrounds, then it is not unreasonable to charge the subdivider with the burden of providing them. The case on which the appellant seems to rely most heavily adopts this rationale. In Pioneer Trust & Savings Bank v. Village of Mount Prospect, 22 Ill.2d 375, 176 N.E.2d 799, 801, the Supreme Court of Illinois quoting from an earlier decision, Rosen v. Village of Downers Grove, 19 Ill.2d 448, 167 N.E.2d 230, said:

" 'The distinction between permissible and forbidden requirements is suggested in Ayres v. City Council of City of Los Angeles, 34 Cal.2d 31, 207 P.2d 1, 11 A.L.R.2d 503, which indicates that the municipality may require the developer to provide the streets which are required by the activity within the subdivis-

ion but can not require him to provide a major thoroughfare, the need for which stems from the total activity of the community.'" The Illinois Court then stated: "It is in the light of these basic principles that the reasonableness of the requirement sought to be imposed by the defendant village must be determined. If the requirement is within the statutory grant of power to the municipality and if the burden cast upon the subdivider is specifically and uniquely attributable to his activity, then the requirement is permissible; if not, it is forbidden and amounts to a confiscation of private property in contravention of the constitutional prohibitions rather than reasonable regulation under the police power. * * *

"There can be no controversy about the obvious fact that the orderly development of a municipality must necessarily include a consideration of the present and future need for school and public recreational facilities. Neither the plaintiffs nor the defendants in this case take the negative side of the question as to the desirability either of education or recreation. The question is not one of the desirability of education or recreation, nor of the desirability to improve the public condition, but, rather, the question presented here is one of determining who shall pay for such improvements. Is it reasonable that a subdivider should be required under the guise of a police power regulation to dedicate a portion of his property to public use; or does this amount to a veiled exercise of the power of eminent domain and a confiscation of private property behind the defense of police regulations? * * *

"However, this record does not establish that the need for recreational and educational facilities in the event that said subdivision plat is permitted to be filed, is one that is specifically and uniquely attributable to the addition of the subdivision and which should be cast upon the subdivider as his sole financial burden."

The implication is clear from this opinion that had the record shown that the need for such additional recreational and edu-

cational facilities was created by the subdivision, then it would not have been an unreasonable burden. This rationale has been accepted as justifying many of the burdens placed on subdividers. Zastrow v. Village of Brown Deer, 9 Wis.2d 100, 100 N.W.2d 359 (requiring installation of a water system for the subdivision); Petterson v. City of Naperville, 9 Ill.2d 233, 137 N.E.2d 371 (requiring landowners to provide curbs and gutters in the proposed subdivision); Ayres v. City Council of City of Los Angeles, 34 Cal.2d 31, 207 P.2d 1, 11 A.L.R.2d 503 (requiring dedication of streets, strips of land to be used to widen abutting streets and strips of land to be used for planting trees along roadways); Stanco v. Suozzi, 11 Misc.2d 784, 171 N.Y.S.2d 997 (requiring a fee for installation of sewer system for the subdivision).

The question of whether or not the subdivision created the need for a park or parks is one that has been already answered by our Legislature. It is apparent from the provisions of the subsection in issue, section 11-602, subd. 9, that the Legislature determined that subdivisions of a certain size, that is, twenty acres or more, needed a park or parks. This amounted to a legislative determination that a subdivision of this size created the need for such park or parks, and that such need was not merely concomitant to the natural growth of a municipality. If the Legislature had felt that such parks were needed merely because of the growth of the municipality, it would not have made the requirement that land be dedicated for parks in subdivisions of this size absolute, but would have made the requirement similar to the one for subdivisions under ten acres, that is, leaving it to the discretion of one of the boards mentioned in the statute. However, under the provision governing subdivisions of twenty acres or larger, the park land must be dedicated, it must be of a certain size, and it must be located within the subdivision to be platted. The fact that subdivisions under ten acres are not absolutely required to have park land dedicated is further illustrative of the afore-

mentioned legislative determination. Such a determination, that is, one upon which the Legislature predicates its action, is within the province of that body and will not be disturbed by the judiciary unless the evidence to the contrary preponderates against it. Accord: State v. Safeway Stores, 106 Mont. 182, 76 P.2d 81; Hilger v. Moore, 56 Mont. 146, 177, 182 P. 477; Rutherford v. City of Great Falls, 107 Mont. 512, 86 P.2d 656; Willett v. State Board of Examiners, 112 Mont. 317, 115 P.2d 287. In the instant case no evidence has been introduced to rebut such presumption and mindful of the duty of this court to uphold enactments of the Legislature *if there is any rational basis* on which they can be upheld, (State ex rel. Abel v. District Court, 140 Mont. 117, 368 P.2d 572, it is found that the statute is not an unreasonable exercise of the police power.

The appellant next contends that: "The provisions of section 11-602, subd. 9, allowing the administrative body concerned to diminish the area to be dedicated or to waive it altogether is also objectionable as a delegation of legislative power."

Not every delegation of power by the Legislature can be objected to as unconstitutional as was pointed out in the case of State v. Stark, 100 Mont. 365, 52 P.2d 890, where quoting from Cooley's Const. Limitations, 8th ed. pp. 225, 226, the court said:

" 'One of the settled maxims in constitutional law is that the power conferred upon the legislature to make laws cannot be delegated by that department to any other body or authority. This maxim, however, does not preclude the legislature from delegating any power not legislative which it may itself rightfully exercise. The legislature must declare the policy of the law and fix the legal principles which shall control in a given case; but an administrative officer or body may be invested with the power to ascertain facts and conditions to which the policy and principles apply. If this could not be done there would be infinite confusion in the laws, and in an effort to

detail and particularize, they would miss efficiency in both provision and execution. * * * Though legislative power cannot be delegated to boards and commissions, the legislature may delegate to them administrative functions in carrying out the purposes of a statute and various governmental powers for the more efficient administration of the laws.' "

The appellant contends that the subsection in issue gives the administrative body concerned "unbridled discretion to decide when a park dedication must be made." We do not read the subsection this way. This subsection requires that there must be a dedication of an area for parks in all subdivisions of twenty acres or larger as a condition precedent to plat approval. The exact proportion to the subdivision to be so set aside is provided for by the statute, however, the administrative body concerned may upon good cause being shown, reduce the area to no less than the minimum provided for. The Legislature has laid down a policy in this subsection. Subdivisions of twenty acres or larger must have a certain proportion of their area set aside for parks. They have provided for some flexibility by allowing the administrative body concerned to vary the area, within certain well-specified limits upon a showing of good cause. This is not an unconstitutional delegation for the reason that the Legislature has laid down the policy to be followed and has given the administrative body the power to act within well-specified limits and only upon good cause being shown. It would be hard to imagine, much less to list, all the reasons for diminishing the area to be dedicated for parks. The Stark case, supra, 100 Mont. 365, 371, 52 P.2d 890, 893, contains this statement which we feel is particularly applicable to this case:

" 'The legislature cannot delegate its power to make a law, but it can make a law to delegate a power to determine some fact or state of things upon which the law makes, or intends to make, its own action depend. To deny this would stop the

wheels of government.' Field v. Clark, 143 U.S. 649, 694, 12 S.Ct. 495, 505, 36 L.Ed. 294."

This is what has been done in this instance, the Legislature has made the law, and the administrative bodies have been given the discretion to determine the facts and apply the law.

 Insofar as subdivisions containing less than twenty acres are concerned, we feel that these same general rules apply. A careful reading of subdivision 9 of section 11-602 reveals that the same limits and standards that apply to subdivisions twenty acres or larger apply to tracts of less acreage. Surely the appellant would not contend that the one-ninth, one-twelfth limitation on the area to be dedicated does not apply to these smaller subdivisions because this would lead to an absurd result. If the statute were construed so that this limitation did not apply then the administrative body could require almost all of a subdivision of less than twenty acres to be dedicated for parks, whereas if it were twenty acres or larger, then they could only require between one-twelfth and one-ninth to be so dedicated. Statutory or constitutional construction should not lead to absurd results if reasonable construction will avoid it. State ex rel. Ronish v. School Dist. No. 1, 136 Mont. 453, 348 P.2d 797, 78 A.L.R.2d 1012. Since it is obvious that the one-ninth, one-twelfth limitation must be applied to subdivisions under twenty acres as well as those over, it must carry with it the standard by which it is applied. This being true we again have to construe the statute so that it will not lead to absurd results and say that the standard to be applied when deciding if they will diminish the area for parks, that is, "good cause shown" must also apply when they decide to waive the park requirement. If this were not so it would lead to the result that to diminish the area from one-ninth to one-twelfth cause must be shown, but no cause must be shown when the park dedication is to be waived. We do not believe that such is the proper construction of this statute. Therefore we do not

find that there is an unconstitutional delegation of legislative power.

Appellant's final contention concerns the tract of land denominated Parcel B which contains approximately 1.252 acres. Appellant alleges that: "Aside from constitutional considerations, there can be no requirement of dedication with respect to Parcel B which is less than ten acres in area because section 11-614, R.C.M.1947, specifically exempts such tracts from the park requirement."

The pertinent provisions of the statute in question read:

"Any person who desires to subdivide and sell or transfer any tract of land in small tracts, such as orchard tracts, vineyard tracts, acreage tracts, suburban tracts, or community tracts, containing less than the United States legal subdivision of ten (10) acres, * * * must cause the same to be surveyed, platted, certified, and filed in the office of the county clerk and recorder of the county in which said land lies, according to the provisions of this chapter before any part or portion of the same is sold or transferred; *except that it will not be necessary to comply with the provisions of this chapter relating to parks and playgrounds,* and such sales or transfers must be made by reference to the plat on file and the numbers of the lots and blocks. * * *" Emphasis supplied.

In considering this section it is at once apparent that it covers what it specifically describes as being covered, and is not intended to cover lots, but tracts. Webster's Third New International Dictionary defines a lot as a "measured parcel of land having fixed boundaries and designated on a plot or survey"; whereas, a tract is there defined as "an area either large or small; as a region or stretch (as of land) that is usually indefinitely described or without precise boundaries." While it is true that a tract is also described as a "precisely defined or definable area of land," it appears rather clear from the provisions of the section that the law intends tracts indefinitely described to be precisely defined. The section specific-

ally refers back to section 11-602, by the words "according to the provisions of this chapter," and the underlined portion of the section was the result of an amendment by the Twenty-sixth Session of the Legislature in 1939 and such exception relates again to section 11-602 which contains the provision which is being excepted.

In this cause the district court found as a matter of law:

"I. That the two tracts of land described as Parcels 'A' and 'B' in Paragraph III of the agreed statement of facts, are both located immediately adjacent to the City of Billings, all as shown by the plat attached to the agreed statement of facts, and taking into consideration the geographical divisions of the City of Billings, of which the court will take judicial notice; that no part of either of said tracts are located within the limits of any city or town, or townsite, or any addition to any city or town; that from said plat, it is made to appear from the size of the lots, and the streets and alleys contained therein, and the location thereof that the property is being subdivided or platted for building purposes; that the provisions of section 11-614.1, R.C.M.1947, as enacted as section 1 of Chapter 82, of the Laws of 1953, makes provision for the property described in paragraph III of the agreed statement of facts; that the provisions of section 11-602, R.C.M.1947, and specifically the provisions of subsection 9 of said section, are applicable to the property described in paragraph III of the agreed statement of facts, in view of the fact that section 11-614.1 provides that where the survey plat indicates that the property is being subdivided or platted for building purposes, the County Commissioners may require the plat to be prepared in accordance with all the requirements for plats of cities or towns or additions thereto, and thereby, by reference adopts the provisions of subsection 9 of section 11-602, R.C.M.1947.

"II. That the provisions of subparagraph 9, section 11-602, R.C.M.1947, and the acts of the defendants in rejecting the above plats in reliance thereon, as set forth in said agreed

statement of facts, does not contravene the provisions of section 14, Article III of the Constitution of Montana, and/or the Fourteenth Amendment to the Constitution of the United States, and that they do not amount to a confiscation of private property without compensation; that such statute and acts thereunder, do not amount to an invalid extension of the police power.

"III. That section 11-602, R.C.M.1947, does not contravene the provisions of section 1, Article IV of the Constitution of Montana, in that with respect to tracts less than 20 acres, it fails to describe, with reasonable clarity, if when, and under what circumstances land must be dedicated for park and playground purposes, and sets no limits or guidelines upon the authority or power of the County Commissioners or the Planning Board in such respect; that it does not amount to an unconstitutional delegation of legislative authority.

"IV. That with respect to Sweet Acres Subdivision, 6th Filing, section 11-614, R.C.M.1947, taken in connection with section 11-614.1, does not completely or at all exempt plaintiff from dedicating any land for park and playground purposes for the reason that it is less than ten acres in area.

"V. That the defendants, County Commissioners, were acting within jurisdiction and within the authority granted to them by the laws of Montana, in rejecting the plats referred to in said agreed statement of facts, for the failure of plaintiff to dedicate any land for park and playground purposes."

Section 11-614.1, R.C.M.1947, was enacted in 1953, and provides:

"The city or town council, if the area lies within or partly within the boundaries of any city or town, or the board of county commissioners, if the area lies wholly outside the boundaries of any city or town, shall inspect all plats prepared under the provisions of section 11-614 and indicate their approval thereon in writing before the county clerk and recorder shall accept said plats for filing. *In all cases where the survey*

*plat indicates that the property is being subdivided or platted for building purposes, the city or town council or the board of county commissioners, as the case may be, may require the plat to be prepared in accordance with all the requirements for plats of cities or towns or additions thereto."* Emphasis supplied.

The italicized portion of this section evidences that when the survey plat is for building purposes the city or town council or the board of county commissioners, as the case may be, may require the plat to be prepared in accordance with the requirements of section 11-602, R.C.M.1947.

It is our opinion that the holding of the district court was correct in that all the sections of this chapter dealing with platting relate to section 11-602, as the foundation section and all other sections are correlated with it.

For the foregoing reasons the judgment of the district court is affirmed.

MR. CHIEF JUSTICE JAMES T. HARRISON and MR. JUSTICES CASTLES, ADAIR and DOYLE concur.