431 So.2d 606 (1983)
HOLLYWOOD, INC., Appellant,
v.
BROWARD COUNTY, Florida, a Political Subdivision of the State of Florida, Appellee.
No. 81-700.
District Court of Appeal of Florida, Fourth District.
March 23, 1983.
Rehearing Denied June 13, 1983.
*607 Ellis, Spencer, Butler & Kisslan, Ross P. Beckerman, Hollywood, and Davis W. Duke, Jr. of McCune, Hiaasen, Crum, Ferris & Gardner, P.A., Fort Lauderdale, for appellant.
Harry A. Stewart, Gen. Counsel to the Bd. of County Com'rs, Fort Lauderdale, Fred P. Bosselman, Edward F. Ryan and Joel F. Bonder of Ross, Hardies, O'Keefe, Babcock & Parsons, Sp. Counsel to the Bd. of County Com'rs, Chicago, III., and F. Craig Richardson, Jr. of Ross, Hardies, O'Keefe, Babcock & Parsons, Sp. Counsel to the Bd. of County Com'rs, Boca Raton, for appellee.
HURLEY, Judge.
This appeal concerns the validity of a Broward County ordinance that requires a developer/subdivider, as a condition of plat approval, to dedicate land or pay a fee to be used in expanding a county level park system sufficiently to accommodate the new residents of the platted development. The appellant has asserted that Broward County lacks legal authority to adopt this type of ordinance. We do not agree and, thus, we affirm the trial court's conclusion that the ordinance is valid.
The appellant is a real estate development corporation that paid a fee under the ordinance and later commenced this action seeking declaratory and injunctive relief as well as a refund of the fee. The appellant has challenged the part of the ordinance that requires, as a condition of plat approval, the dedication of land or the payment of a fee for use by the county in acquiring and developing county level parks.[1]
The ordinance has three alternate provisions: (1) the developer can dedicate three *608 acres for every one thousand residents of the proposed subdivision, (2) the developer can pay an amount of money equal to the value of land that would have been dedicated, or (3) the developer can pay an impact fee according to a schedule in the ordinance. The developer in this case chose option two and paid an amount equal to the value of the land that would have been dedicated. At trial, the county introduced evidence that the ordinance seeks to impose fees only for those capital acquisition costs that the county will incur because of the new subdivision residents and that the money collected will be used for the substantial benefit of those residents. The trial court concluded that the ordinance is a valid and constitutional exercise of the county's legislative powers.
We discern two principal thrusts in appellant's overall attack on the ordinance: (1) the appellant asserts that the Broward County Commission lacks authority under the Broward County Charter to enact this type of ordinance and (2) the appellant asserts that no Florida court has countenanced the imposition of land or fee requirements for use by a county in expanding its county level parks. Included in these attacks are allegations that the ordinance violates fundamental constitutional rights including due process and equal protection and allegations that the ordinance constitutes an unconstitutional taking without just compensation and is, in fact, an illegal tax. In response, the appellee contends that the ordinance does not exceed the broad home rule powers of the Broward County Charter and that the ordinance merely exacts reasonable and valid regulatory fees.

*609 I

THE CHARTER
At the outset, we note that counties, as political subdivisions of the state, derive their sovereign powers exclusively from the state. Florida charter counties, such as Broward County, derive their sovereign powers from the state through Article VIII, Section 1(g) of the Florida Constitution which provides in pertinent part:
Counties operating under county charters shall have all powers of local self-government not inconsistent with general law, or with special law approved by the vote of the electors. The governing body of a county operating under a charter may enact county ordinances not inconsistent with general law.
Through this provision, the people of Florida have vested broad home rule powers in charter counties such as Broward County.
The people have said that charter county governments shall have all the powers of local government unless the state government takes affirmative steps to preempt local legislation.[2] Of course, the power of charter county governments is limited by certain provisions of the Florida Constitution such as the Declaration of Rights in Article I and the limitations on taxing power found in Article VII. In addition, the counties' power is limited, just as is the state's power, by the provisions of the United States Constitution and any federal legislation that binds the states.
In the absence of preemptive federal or state statutory or constitutional law, the paramount law of a charter county is its charter. Cf. City of Miami Beach v. Fleetwood Hotel, Inc., 261 So.2d 801 (Fla. 1972) (city charter). In essence, the charter acts as the county's constitution and, thus, ordinances must be in accordance with the charter.
The people of Broward County have empowered their county government with very broad powers by incorporating the following provisions into their charter:
Section 1.03. GENERAL POWERS OF THE COUNTY.
A. Unless provided to the contrary in this Charter, Broward County "shall have all powers of local self-government not inconsistent with general law or with special law approved by vote of the electors."
Section 1.08. CONSTRUCTION.
The powers granted by this Charter shall be construed liberally in favor of the county government. The specified powers in this Charter shall not be construed as limiting, in any way, the general or specific power of the government, as stated in this Article.
Pursuant to these provisions, the people of Broward County have conferred all the powers a Florida charter county can have, subject only to other contrary provisions in the charter.
The appellant relies on another provision in the charter as establishing by inference that the county government violated the charter in enacting the ordinance under review. That provision provides:
Section 6.12. PLAT ORDINANCE.
The legislative body of each municipality within Broward County and the County Commission for the unincorporated area shall, within six (6) months after the effective date of this Charter, create a mandatory plat ordinance.
No plat of lands lying within Broward County, either in the incorporated or unincorporated areas, may be recorded in the Official Records prior to approval by the County Commission. The County Commission shall enact an ordinance establishing standards, procedures and minimum requirements to regulate and control the platting of lands within the incorporated and unincorporated areas of Broward County. The governing body of each municipality may enact an ordinance establishing additional standards, procedures and requirements as may be necessary *610 to regulate and control the platting of lands within its boundaries.
We can find nothing in this provision which suggests that the people of Broward County intended to prohibit their county government from enacting an ordinance requiring dedications or fees for expanding parks as a condition of plat approval. Thus, we find appellant's first attack to be ineffective.[3]

II

VALIDITY OF DEDICATION OR FEE REQUIREMENTS
The more difficult question is whether the ordinance violates the state or federal constitution. As noted before, the appellant has alleged that the ordinance denies due process and equal protection, that it effects a taking without just compensation, and that it exacts illegal taxes.
This court has previously considered the validity of an ordinance which required the dedication of park land or the payments of fees in lieu of dedication. See Admiral Development Corp. v. City of Maitland, 267 So.2d 860 (Fla. 4th DCA 1972). In Admiral Development a real estate developer challenged an ordinance as being beyond the scope of the city's charter authority and unconstitutional. The ordinance required, as a condition of plat approval, that the subdivider dedicate at least five percent of the platted land or pay five percent of the value of the land to be used for park and recreation areas. This court scrutinized the city charter and concluded that the ordinance was beyond the scope of the city government's power under its charter. Secondly, we concluded that the five percent fixed percentage was arbitrary and overbroad. We reasoned that a fixed percentage that relates to the amount of land to be platted, rather than the number of residents that will occupy the land, cannot adequately ensure that the subdivider pays only for the amount of new park lands that the locality will be required to acquire in order to service the new development.
In the present case, as noted above, there is no problem with a lack of power under the charter provisions themselves, that is, assuming the ordinance is not inconsistent with state or federal law. Secondly, the ordinance under review does not suffer the infirmities of a fixed percentage ordinance. The ordinance in the present case exacts land or fees based on the number of people expected to live in the subdivision rather than the amount of land to be platted.
In Admiral Development, we declined to provide a general prescription by which park fee ordinances should be evaluated. Yet we did suggest that the appellee city might look for guidance, in the consideration of any proposed charter amendment or ordinance adoption, to a California case that considered and rejected a due process, equal protection, and taking without just compensation challenge. 267 So.2d at 863 n. 3 (citing Associated Home Builders of Greater East Bay, Inc. v. City of Walnut Creek, 4 Cal.3d 633, 94 Cal. Rptr. 630, 484 P.2d 606 (1971)). Although we believe that the ordinance now under review satisfies the standards established by the California Supreme Court in Walnut Creek, we also believe that our reference to the California case has been superseded to some extent by later Florida decisions. Nonetheless, we think it helpful to note the California court's statements concerning the rationale justifying subdivision exactions for parks:
The rationale of the cases affirming constitutionality indicate the dedication statutes are valid under the state's police power. They reason that the subdivider realizes a profit from governmental approval of a subdivision since his land is rendered more valuable by the fact of subdivision, and in return for this benefit the city may require him to dedicate a portion of his land for park purposes whenever the influx of new residents will increase the need for park and recreational facilities. Such exactions have been compared to admittedly valid zoning regulations *611 such as minimum lot size and setback requirements. [Citations omitted.]
4 Cal.3d at 644-45, 94 Cal. Rptr. at 639, 484 P.2d at 615; see also Wald Corp. v. Metropolitan Dade County, 338 So.2d 863, 867 (Fla. 3d DCA 1976) (discussed infra), cert. denied, 348 So.2d 955 (Fla. 1977).
The Florida Supreme Court recently announced the legal standards by which Florida courts must evaluate ordinances which exact dedications or fees from real estate developers. See Contractors & Builders Association of Pinellas County v. City of Dunedin, 329 So.2d 314 (Fla. 1976). In City of Dunedin the court rejected the argument that fees exacted from builders for the construction of capital improvements to water and sewage systems constitute illegal taxes. The court held that local governments can impose impact fees which do not exceed a pro rata share of the reasonably anticipated costs of capital expansion reasonably required because of new development so long as the use of the money collected is limited by law to meeting the costs of that capital expansion and so long as the exactions are not inconsistent with a state statute. Thus, the court held that local governments can shift to new residents the reasonable capital costs incurred on their account.[4]
One of our sister courts has also addressed the question of whether subdivision exactions are permissible under Florida law. See Wald Corp. v. Metropolitan Dade County, 338 So.2d 863 (Fla. 3d DCA 1976), cert. denied, 348 So.2d 955 (Fla. 1977). The Wald case concerned a county ordinance that required subdividers, as a condition of plat approval, to dedicate drainage canal rights-of-way and maintenance easements. The apparent purpose of the ordinance was to protect the subdivision from periodic flooding and to protect up-and-downstream owners from the effects of the subdivision's rainwater runoff. The court, recognizing that subdividing is a profit making enterprise, held that a county can impose dedication or impact fee requirements in order to forestall the potential adverse effects of the development and to enable the county to provide adequate public facilities for the new residents. After surveying constitutional tests used by courts in other states to evaluate subdivision exactions, the court enunciated a "rational nexus" or "reasonable connection" test.[5] The court held that dedication or impact fee ordinances are valid when there is a reasonable connection between the required dedication or fee and the anticipated needs of the community because of the new development.
From City of Dunedin, Wald, and Admiral Development, we discern the general legal principle that reasonable dedication or impact fee requirements are permissible so long as they offset needs sufficiently attributable to the subdivision and so long as the funds collected are sufficiently earmarked for the substantial benefit of the subdivision residents.[6] In order to satisfy these requirements, the local government must demonstrate a reasonable connection, or rational nexus, between the need for additional capital facilities and the growth in population generated by the subdivision. In addition, the government must show a reasonable connection, or rational nexus, between the expenditures of the funds collected *612 and the benefits accruing to the subdivision. In order to satisfy this latter requirement, the ordinance must specifically earmark the funds collected for use in acquiring capital facilities to benefit the new residents. The developer, of course, can attempt to refute the government's showing by offering additional evidence.

III

THE EVIDENCE
In the present case, Broward County offered evidence that it has adopted and implemented a county park program with a standard of three acres of developed county level parkland per one thousand residents. The evidence also shows that this standard is not unreasonably high; in fact, it could be argued that it is low. In addition, the record shows that the county is meeting the needs of the current population through various methods including a $73 million bond issue, but that the growth generated by new subdivisions will require the county to acquire and develop new land in order to maintain its standard of three acres per one thousand residents. The county also offered evidence to show that the fees collected under the ordinance were less than the amount it would have to pay in order to maintain its standard of parkland and yet accommodate the subdivision residents even after they were credited for the future ad valorem taxes they would pay towards retiring the outstanding park bonds. Thus, Broward County demonstrated a reasonable connection between the need for additional park facilities and the growth in population that will be generated by the subdivision and, in addition, that the fees were an equitable pro rata share of the cost of reasonable capital expansion required because of new development. Although the developer attempted to refute this showing, the trial court resolved the conflicts in the evidence in a permissible manner and the judgment is supported by competent substantial evidence.
Broward County also demonstrated a reasonable connection, or a rational nexus, between the expenditures of the funds collected under the ordinance and the benefits accruing to the subdivision. The ordinance requires the funds collected to be "expended within a reasonable period of time, for the purpose of acquiring and developing land necessary to meet the need for county level parks created by the development in order to provide a system of county level parks which will be available to and substantially benefit the residents of the platted area."[7] The ordinance further limits the use of these funds to acquiring and developing new land for park purposes within fifteen miles of the platted land. The reasonableness of this distance is shown by the county's evidence that residents travel widely in order to take advantage of the features that can be provided at county level parks. Based on this evidence, we believe that the ordinance adequately earmarks the funds collected for use in expanding the regional park system to accommodate the subdivision residents.

IV

PRIOR CASE LAW
The appellant has asserted that the Broward ordinance violates our holding in Broward County v. Janis Development Corp., 311 So.2d 371 (Fla. 4th DCA 1975).[8]Janis involved a Broward County road impact fee ordinance. The ordinance, which was enacted while Broward County was a non-character *613 county, attempted to assess $200 per dwelling on new development, as a condition for the issuance of a building permit, to be used to construct or improve roads, streets, highways and bridges or to acquire rights-of-way for such facilities in the vicinity of the development. In considering the validity of the ordinance, we first looked to the source of power to enact the ordinance. We implicitly concluded that Broward County, as a non-charter county, could impose such a fee, if at all, only because it had the power to require building permits. Next, we concluded that the impact fees were impermissible as regulatory fees exacted pursuant to the power to require building permits because the money generated was far in excess of the cost of regulating the quality of building. We distinguished cases upholding the validity of ordinances requiring dedications or fees in lieu thereof, such as that involved here, on several grounds. First, we found that the ability to pay a fee in lieu of dedication actually inured to the benefit of a subdivider and was an ameliorating characteristic of the dedication ordinances. Second, we found certain deficiencies in the particular road impact fee ordinance under review. In particular, we considered the requirement that the money be used to construct or improve roads in the vicinity of the development to be an insufficient and nebulous limitation on the county's discretion in spending the funds. We then concluded that the fees were not valid as regulatory fees and must therefore constitute taxes. Finally, we concluded that, evaluated as taxes, the fees were illegal because they were not authorized by a state statute as required by the Florida Constitution.
Even if we assume that Janis Development has not been limited in prospective application by the more recent opinion of the Florida Supreme Court in City of Dunedin, the present ordinance would not violate Janis Development. In the case now before us, the source of power to require dedications or fees is not the county's power to require platting, but rather the county's power to regulate the adverse effects of subdivision development. In this case, the evidence shows that the money collected will not exceed the amount the county will spend in alleviating the adverse effects attributable to the regulated development. In addition, the present ordinance sufficiently earmarks the future use of the money for capital facilities to serve the new subdivision. Thus, in the present case, the ordinance is valid as a regulatory measure and is not, as in Janis, invalid and by default a tax.
In addition to relying on Florida cases, the parties have cited authorities from other states. Although these authorities disagree on the proper test which should be used to evaluate the validity of park dedication or fee ordinances, they overwhelmingly recognize that government has a legitimate interest in and can use its police power to ensure, the adequate provision of parks, open space, and recreational areas.[9] On the other hand, at least one court has said,
While government can clearly require the dedication of watermains and sewers as well as property for streets and alleys, we believe these to be distinguishable from the dedication of property for recreational purposes. The former bears a substantial relation to the safety and health of the community while the latter does not.
Berg Development Co. v. City of Missouri City, 603 S.W.2d 273, 275 (Tex.Civ.App. *614 1980, writ ref'd n.r.e.). We respectfully disagree. Open space, green parks and adequate recreation areas are vital to a community's mental and physical well-being. As such, the ability to regulate subdivision development in order to ensure the adequate provision of parks and recreational facilities is a matter that falls squarely within the state's police powers to provide for the health, safety, and welfare of the community.[10]

V

SUMMARY
To summarize, we hold (1) that the ordinance does not violate the provisions of the Broward County Charter and (2) that subdivision exactions for county level parks are permissible so long as (a) the exactions are shown to offset, but not exceed, reasonable needs sufficiently attributable to the new subdivision residents and (b) the funds collected are adequately earmarked for the acquisition of capital assets that will sufficiently benefit those new residents. Accordingly, the judgment of the trial court is AFFIRMED.
DOWNEY and BERANEK, JJ., concur.
NOTES
[1] This case concerns Ordinance 77-43 as amended by Ordinances 78-19, 78-51, and 79-9. The relevant provisions of the amended ordinance were codified as Section 5-192(e) of the Broward County Code and provide:

(e) A plat suitable for residential development pursuant to the applicable land development regulations shall be designed to provide for the park, open space and recreational needs of the future residents of the platted area, and the developer shall be required to comply with the provisions of subsection (1) and subsection (2) prior to the recordation of the proposed plat.
* * * * * *
(2) In order to provide lands or funds or both to be used by the County Commission to provide additional regional, subregional and urban parks necessary to meet the need for such county level parks created by additional residential development, a developer must, at the discretion of the County Commission, either:
a. Dedicate land of suitable size, dimension, topography and general character to serve as regional, subregional or urban parks or a substantial portion thereof which will meet County level park needs created by the development. The total amount of land to be dedicated either on or off the development site must equal a ratio of three (3) acres of land for every one thousand (1,000) residents of the development, or
b. Agree to deposit in a non-lapsing Trust Fund established and maintained by the County, an amount of money equal to or exceeding the value of such amount of land as would have been required to be dedicated under subsection a. above, to be determined by the Broward County Property Appraiser's appraised value of the land or by the most recent purchase price paid for the land, whichever is higher. Such amounts of money shall be deposited in the Trust Fund prior to the recordation of the proposed plat, or c. Agree to deposit in a non-lapsing Trust Fund established and maintained by the County an amount of money as set forth in the schedule below for each dwelling unit to be constructed within the platted area. Such amounts shall be deposited prior to the issuance of a building permit for the construction of each dwelling unit. From the effective date of this Ordinance until September 30, 1978 the amount of money to be deposited for each dwelling unit to be constructed shall be as follows and for each fiscal year thereafter shall be increased by six percent (6%) compounded on an annual basis.
Sixty dollars ($60.00) for each dwelling unit with up to one (1) bedroom.
Eighty-five dollars ($85.00) for each dwelling unit with two (2) bedrooms.
One hundred twenty-five dollars ($125.00) for each dwelling unit with three (3) or more bedrooms.
(3) The county commission shall establish an effective program for the acquisition of lands for development as regional, subregional and urban parks in order to meet, within a reasonable period of time, the existing need for county level parks, and to meet, as it occurs, the need for county level parks which will be created by further residential developments constructed after the effective date of this Ordinance. The annual budget and capital program of the County shall provide for appropriation of funds as may be necessary to carry out the County's program for the acquisition of land for county level parks. The funds necessary to acquire lands to meet the existing need for county level parks must be provided from a source of revenue other than from the amounts deposited in the Trust Fund. Such amounts shall be expended within a reasonable period of time, for the purpose of acquiring and developing land necessary to meet the need for county level parks created by the development in order to provide a system of county level parks which will be available to and substantially benefit the residents of the platted area. If a proposed plat is approved by the County Commission and recorded in the Official records after the effective date of this Ordinance then the developer shall be exempted from any provisions in the County Land Use Plan requiring the payment of impact fees for the purpose of providing funds for the acquisition of land for county level parks.
* * * * * *
(7) In accordance with the descriptions of neighborhood, community, urban, subregional and regional parks contained in Chapter IIIG, Broward County Land Use Plan 1977, monies deposited by a developer pursuant to this subsection shall not be expended to acquire or develop land for park purposes farther from the platted land than the following distances measured from the perimeter of the platted land:
* * * * * *
ii. urban, subregional and regional parks  15 miles.
We note that the ordinance has, since this suit commenced, been amended again and renumbered. See § 5-198(h), Broward County Code (1981 supp. # 15).
[2] In the present case, the appellant has not asserted that the Broward County ordinance violates a statute.
[3] In light of our ruling, we have found it unnecessary to address the appellee's argument that it was empowered to enact the ordinance by the Local Government Comprehensive Planning Act. § 163.3161, et seq., Fla. Stat. (1975).
[4] The court, however, concluded that the particular ordinance under review was defective because it failed to include sufficient restrictions on the use of the money collected. The ordinance was later amended and upheld. See City of Dunedin v. Contractors & Builders Association of Pinellas County, 358 So.2d 846 (Fla. 2d DCA 1978), cert. denied, 370 So.2d 458 (Fla. 1979), cert. denied, 444 U.S. 867, 100 S.Ct. 140, 62 L.Ed.2d 91 (1979).
[5] This test was espoused, at least in part, in Jordan v. Village of Menomonee Falls, 28 Wis.2d 608, 137 N.W.2d 442 (1965), appeal dismissed, 385 U.S. 4, 87 S.Ct. 36, 17 L.Ed.2d 3 (1966), and described in Juergensmeyer & Blake, Impact Fees: An Answer to Local Governments' Capital Funding Dilemma, 9 Fla. St.U.L.Rev. 415, 430-33 (1981).
[6] Of course, a county could not require subdivision exactions which are so formidable as to deny the property owner of all reasonable use of the property. See Graham v. Estuary Properties, Inc., 399 So.2d 1374 (Fla.), cert. denied, 454 U.S. 1083, 102 S.Ct. 640, 70 L.Ed.2d 618 (1981). Such an exaction would not be reasonable.
[7] Although "developing" is arguably ambiguous, we believe that it adequately limits the use of the funds to construction of capital improvements on the newly acquired land.
[8] The appellant has also relied on two trial court opinions which, although not binding as legal precedent are nonetheless persuasive. Venditti-Siravo, Inc. v. City of Hollywood, 39 Fla. Supp. 121 (Cir.Ct. 1973); Carlann Shores, Inc. v. City of Gulf Breeze, 26 Fla. Supp. 94 (Cir.Ct. 1966). Venditti-Siravo concerned an ordinance that required the payment of a fixed percentage of building costs. Carlann Shores concerned an ordinance that required dedication of a fixed percentage of the amount of subdivided land or payment of a fee in lieu thereof. Thus, both ordinances were analogous to the ordinance invalidated in Admiral Development, supra.
[9] See Associated Homebuilders of Greater East Bay, Inc. v. City of Walnut Creek, 4 Cal.3d 633, 94 Cal. Rptr. 630, 484 P.2d 606 (1971); Krughoff v. City of Naperville, 68 Ill. 352, 12 Ill.Dec. 185, 369 N.E.2d 892 (1977); Home Builders Ass'n of Greater Kansas City v. City of Kansas City, 555 S.W.2d 832 (Mo. 1977); Billings Properties, Inc. v. Yellowstone County, 144 Mont. 25, 394 P.2d 182 (Mont. 1964); Patenaude v. Town of Meredith, 118 N.H. 616, 392 A.2d 582 (N.H. 1978); Jenad, Inc. v. Village of Scarsdale, 18 N.Y.2d 78, 271 N.Y.S.2d 955, 218 N.E.2d 673 (1966); Banberry Development Corp. v. South Jordan City, 631 P.2d 899 (Utah 1981); Jordan v. Village of Menomonee Falls, 28 Wis.2d 608, 137 N.W.2d 442 (1965); see generally, Annot., Validity and Construction of Statute or Ordinance Requiring Land Developer to Dedicate Portion of Land for Recreational Purposes, or Make Payment in Lieu Thereof, 43 A.L.R.3d 862 (1972).
[10] This view was espoused by the Florida Legislature which has required counties to establish comprehensive land use plans including the "efficient provision of transportation, water, sewage, schools, parks, recreational facilities, housing and other requirements and services... ." See § 163.3161(3), Fla. Stat. (1981) (emphasis added).